THOMAS C. HORNBY, ADMINISTRATOR, APPELLEE, V. STATE LIFE INSURANCE COMPANY, APPELLANT.

FILED JULY 15, 1921.    No. 21512.

1.  Insurance: DEATH BY VIOLENCE: PRESUMPTION. In a suit on an insurance policy, covering death caused by violent, external and accidental means, where the proof reasonably shows that an injury was produced by violent and external means, and where there is no ground for suspicion that the wound was intentionally inflicted, there is a presumption that the insured did not voluntarily inflict the injury upon himself, and it is presumed that the injury was the result of accident.

2.  ———: ———: BLOOD POISONING. Where the insured sustains an injury through violent, external and accidental means, and blood poisoning sets in, finally resulting in death, it is immaterial whether the infection was introduced at the time of the accident and through the instrument operating to cause the injury, if the infection enters before the wound has become so cured as to prevent exposure to infection, and if the infection comes about naturally, without any apparent human act to produce it.

3.  ———: ———: ———. The blood poisoning resulting in such a wound will be considered as the effect of the injury, and not as an additional or other cause aside from the accident, and the consequent death is *held* to be the result of the accident exclusively and independent of other causes.

4.  ———: ———: TRIAL: INSTRUCTION. An instruction that the jury, in determining the cause of the injury, might consider all the facts and circumstances in evidence, and were entitled to draw reasonable inferences and conclusions from such facts and circumstances, *held* not erroneous and not misleading so as to authorize the jury to draw illogical inferences.

5.  Evidence: EXPERT EVIDENCE. An opinion of an expert must be based upon facts, proved or assumed, sufficient to form a basis for an opinion, and cannot be invoked to supply the substantial facts necessary to support that conclusion.

APPEAL from the district court for Douglas county:

LEE S. ESTELLE, JUDGE.  *Affirmed.*

*T. W. Blackburn,* for appellant.

*Merton L. Corey* and *Edward F. Dougherty, contra.*

Heard before LETTON, DAY, DEAN, FLANSBURG and ROSE, JJ.

FLANSBURG, J.

This is an action to recover on an insurance policy under a provision allowing double indemnity in case of the death of the insured, resulting from bodily injury, sustained and effected directly through external, violent and accidental means, exclusively and independently of all other causes. The company had paid the face of the policy, but denied liability for double indemnity, under the provision mentioned. Trial was had to a jury and judgment resulted in favor of the plaintiff. The defendant insurance company appeals.

The testimony upon which plaintiff's case is based stands practically without contradiction, and the defendant contends, under the facts so shown, that the plaintiff is not entitled to recover, and argues that there is no evidence that the insured sustained a bodily injury through external, violent and accidental means, and that there is no evidence sufficient to show that death was the result of the accidental injury alleged, since death is shown to have been caused by blood poisoning, and since it does not appear that the poisonous infection was introduced into the wound at the time of the initial injury.

The testimony in behalf of the plaintiff shows that insured and his son, in the latter part of October, 1918, were engaged on the farm of the insured near Valentine, Nebraska, in harvesting a crop of beans, and that the field was badly infested with sand burs. While the harvesting was going on, as insured's wife says, or shortly after it concluded, as insured's son puts it, the insured was noticed by them to be pressing and picking at his thumb. The son testifies that he looked at insured's

thumb and there appeared to be a small hole, a place like a thorn leaves after it has gone in, and that just about the little red spot in the center the skin had turned red and that a sort of callous had formed about the place. The widow's testimony was that she noticed the insured pressing his thumb and picking at it, as if to remove a sliver.

Insured was engaged in the undertaking business, to which he devoted part of his time each week. Shortly after the time the above observations were made, the insured left for Valentine, and was gone a week, engaged in his undertaking business. The testimony shows that he did not directly handle bodies, as he had a helper to do that, but that he did do embalming and inject embalming fluids. When he returned to the farm he was still pressing and working with his thumb. At that time it had become slightly swollen, and from then on the testimony fully shows the progress of an infection, resulting in the swelling of his entire arm and finally in his death, which occurred on November 17 following. The testimony of physicians in behalf of the plaintiff was to the effect that any such infection, originating underneath the skin, is always due to entrance of germs by means of some injury which has resulted in an opening of the skin, although the opening may be ever so slight, and that in this particular instance the infection must have entered through the opening in the skin of insured's thumb. That death resulted from blood poisoning, so introduced into the physical system of the insured, would seem to be beyond reasonable question.

The testimony, however, in behalf of the defendant, which stands undisputed, is that whenever an infection enters a wound it will manifest itself in a few hours, almost always within 24 to 36 hours, and never more than 3 days afterwards. It would seem, then, from the testimony as it stands, that the infection of which the insured died, though perhaps not received at the time of the original injury to his thumb, was at least received later

through that injury and before it had become entirely cured.

It is one of defendant's contentions that the evidence is insufficient to show that the insured met with an injury through external, violent and accidental means, and that, though there is evidence to show that there was a small abrasion or slight hole in the defendant's thumb, there is nothing to show how it was produced, and that its cause must rest entirely in conjecture; and in argument defendant suggests that the insured may have had a pimple or a growth in his thumb resulting from some internal cause, and may have picked at it so as to, himself, have opened the skin and caused a wound through which the poisonous infection entered, and that, since one inference is as likely to be drawn as the other, the plaintiff has not carried the burden of proof, and that the plaintiff's action should, therefore, be dismissed.

The testimony of plaintiff's physicians shows that insured's thumb had been examined, in an endeavor to find some foreign substance that had pierced the skin, but that no thorn, or other foreign substance, was discovered; and that the place where any such foreign matter might have lodged was cut away. One of these physicians testifies that when the skin is pierced by a thorn, or other foreign substance, and the foreign matter, or a part thereof, is left in the skin, a callous will form immediately about, thus walling off the foreign substance from the physical system; that nature thus provides a protective remedy.

The testimony of insured's son, describing the wound as a place like a thorn leaves after it has gone in, with a little red opening where the skin had been pierced, and with a callous about it, in connection with the circumstance of the insured's being employed at that time, or immediately before, in a field infested with sand burs, and in the light of the actions of the insured in pressing his thumb and picking at it, as if to remove a sliver, would, to the ordinary mind, it seems to us, reasonably result in the conviction that a thorn, or some such foreign matter, had

pierced insured's thumb.

This evidence, furthermore, is aided by the presumption that insured did not voluntarily inflict an injury upon himself. It is plain that the insured's thumb was pierced by some foreign substance. The wound and the nature of the wound are proved. Such an injury could only be the result of violent and external means, and, when the proof goes so far, the presumption is in favor of an accident. Under this condition of the evidence, aided by such presumption, we are unable to agree with the defendant's argument that the cause of the injury must be left entirely to conjecture, or that the jury was called upon to guess, without evidence or reasonable inference to guide it, between the theory that the wound was caused through accidental means and the theory that the insured had, himself, with some instrument, voluntarily produced it. *Caldwell v. Iowa State Traveling Men's Ass'n*, 156 Ia. 327; *Omberg v. United States Mutual Accident Ass'n*, 101 Ky. 303; *Peck v. Equitable Accident Ass'n*, 52 Hun (N. Y.) 255; 1 C. J. 495, sec. 278.

Though we do not deem it necessary to go into that question, some of the decisions are to the effect that even where the insured, through a voluntary act, pricks at a pimple and opens the skin, and in doing so unknowingly uses an instrument carrying infection, the resulting blood poisoning will be held to be the result of accident, rather than due to the voluntary act of the insured. *Nax v. Travelers Ins. Co.*, 130 Fed. 985; *Lewis v. Ocean Accident & Guarantee Corp.*, 224 N. Y. 18; *Interstate Business Men's Accident Ass'n v. Lewis*, 257 Fed. 241. And see *National Surety Co. v. Love*, 102 Neb. 633.

Defendant makes the contention, since it is incumbent on the plaintiff to prove that death resulted from an accident exclusively and independently of all other causes than the accident, that, before he can recover in this case, he must show that the poisonous infection was received as a part of the accident and at the time of the original injury.

It is argued that when there is an accidental injury, resulting in an abrasion of the skin, but no infectious matter is injected into the wound through the instrument operating to cause the injury, the injury resulting from the accident becomes complete, and, when an infection enters later through the wound produced, it becomes a new and intervening cause and one other than from the accident itself, and that, when death results in such case from blood poisoning, though, under the general rules of law on proximate cause, the death may be considered to have been caused by the accident, yet, under the specific provisions of the policy, before there can be a liability, the death must result from the accident exclusively and independently of all other causes, and it is argued that the accident is not the sole cause independent of all others, where blood poisoning later sets in and acts as a contributing cause, and that the company is not liable for the results of such several causes taken together.

The question then, as it now occurs, is whether the infection shown in this case, entering a wound which had been previously produced by accidental means, was an additional, contributing or other cause than the injury produced by the accident itself, or whether it was merely incidental to the wound and a natural consequence therefrom.

The abrasion of the skin caused a necessary exposure to such an infection. It was an exposure that could not be entirely guarded against until the foreign substance was removed, or the wound cured. It was a natural consequence that such an infection might set in, and that the wound, of slight and trivial nature in its beginning, should through natural processes develop dire results. The infection was not of some specific disease to which there had been a careless or conscious exposure (see *Maryland Casualty Co. v. Spitz*, 246 Fed. 817), but of a kind that naturally develops from the wound itself, without any apparent human act to aid it. When the infection enters through the wound, produced by the original

accidental injury, naturally and before the wound has become so cured as to prevent exposure to infection, it seems to us immaterial when the infection enters. *Rich v. Hartford Accident & Indemnity Co.*, 208 Ill. App. 506; *Delaney v. Modern Accident Club*, 121 Ia. 528; *Bell v. State Life Ins. Co.*, 24 Ga. App. 497. When it appears that the original injury continues to develop in character and grow worse, it is impossible to determine just when an infection has entered it. In the eyes of the ordinary individual it is the original injury, through the process of development, which produces the final result, and the provision of the policy must be interpreted in that light. *Lewis v. Ocean Accident & Guarantee Corp., supra; Delaney v. Modern Accident Club, supra.* There is no specific expression in the policy, as is found in some policies covering death by accident, that, whenever an accidental injury through the complication of infection shall produce death, there shall be no liability on the part of the company, unless the infection is shown to have been introduced at the time of the accident and by the instrument operating to cause the injury, and where the contract does not so provide we can see no reason for making such an exception.

It is true, as defendant argues, that when insured's son first examined the wound he said that, though there was a small hole, it appeared to have healed over. Just what he meant is somewhat indefinite, but that testimony does not show that the wound had been cured, or that the danger of infection from the original injury had passed. The insured, it was shown, continued to work at his thumb, in an apparent endeavor to remove some object from the wound. It seems quite apparent that the injury had not been cured, but continued from the beginning to be a source of irritation, though it may be true that the surface of the skin over it may have appeared to heal.

We believe that the blood poisoning shown in this case was a natural incident of the wound, and should be considered as an effect of the original injury, rather than as

an independent or additional cause. *Ward v. Ætna Life Ins. Co.,* 82 Neb. 499; *Maloney v. Maryland Casualty Co.,* 113 Ark. 174; *Caldwell v. Iowa State Traveling Men's Ass'n, supra;* 1 C. J. 430, sec. 76.

Error is predicated upon the giving of an instruction telling the jury that—"In determining the question as to whether or not the death of said George H. Hornby would have resulted from external, violent, and accidental means exclusively and independently of all other causes, you are entitled to consider all the facts and circumstances which have been introduced in evidence before you, and you are entitled to draw reasonable inferences and conclusions from such facts and circumstancs."

The case of *Grosvenor v. Fidelity & Casualty Co.,* 102 Neb. 629, is relied upon. That was an action upon an insurance policy covering death by accidental means. Insured died from drinking carbolic acid. The lower court directed a verdict for the plaintiff, relying upon the presumption that death was by accidental means. This court, however, said, in reversing the case, that since it appeared that insured drank carbolic acid, it was presumed that he did so voluntarily, and that the evidence of suicidal intent so introduced into the case destroyed the force of the presumption of death by accidental means, and held that it was incumbent upon the plaintiff to show that the death was accidental "by evidence of the actual facts or a situation from which accident is *the* reasonable inference." In other words, the record must present to the jury such a state of facts that reasonable inferences, showing accident, can be drawn therefrom, and the case cannot be left to the jury for a guess or conjecture in arriving at a conclusion.

In a similar case, *Rawitzer v. Mutual Benefit Health & Accident Ass'n,* 101 Neb. 219, where death was also the result of carbolic-acid poisoning, the court held that the surrounding circumstances were shown to be such as to allow of reasonable inferences as to the cause of death,

and that the case was one which should have been submitted to the jury.

As before pointed out, we are of opinion that the condition of the evidence in this case presents a situation where a natural and reasonable inference could be drawn that the injury was accidental, and the matter of passing upon those inferences was for the jury. Since there was sufficient to take the case to the jury, we believe there was no error in the instruction given. *North Chicago Street R. Co. v. Rodert,* 203 Ill. 413; *Vandalia Coal Co. v. Moore,* 69 Ind. App. 311; *Wilcox v. Southern Railway,* 91 S. Car. 71; *Central of Georgia R. Co. v. Ellison,* 199 Ala. 571; 38 Cyc. 1673.

It is argued that there is prejudicial error in the admission of testimony. Doctor Jonas, who examined the insured after the poisoning had progressed up the arm, was allowed to testify in behalf of the plaintiff that the poisoning was from external means. We see nothing improper in the admission of that testimony, since the doctor testified that poisoning of that kind in that locality always came from without through an opening in the skin. On cross-examination he was asked if septicemia had been in the body prior to the injury, whether or not it might not extend to the surface and manifest itself there, to which the doctor answered that he had only one opinion about this case—that the poisoning came from without; from "an accident." No motion was made to strike out this answer, but it is now contended that the doctor was thus allowed to express his opinion that the injury was the result of accidental means, and, therefore, that the testimony was improperly received. Such an opinion as to a conclusion of fact could, of course, not be received as evidence. *Dreher v. Order of United Commercial Travelers of America,* 173 Wis. 173. We take it that the doctor meant "injury" instead of "accident," and was not attempting to give evidence as to how the injury had been caused, and we cannot see that the answer would mislead the jury.

. The further objection is made that the petition did not state a cause of action, since the name of the beneficiary under the policy was not disclosed. The action was brought by the administrator, and upon a policy, the provisions of which were fully known to the defendant. The trial court allowed an amendment of the pleadings during the trial, and the name of the beneficiary was inserted. We do not see that the defendant could have been taken by surprise by this amendment, or prejudiced in any way.

The case is therefore

AFFIRMED.

LETTON, J., dissenting.

It seems to me the majority opinion rests upon an inference based upon an inference. First, the inference that a sand bur, or other substance, penetrated the thumb. Second, the inference that a malignant germ entered the body through a perforation of the skin thus created. In my opinion the evidence does not justify the recovery.