ABBOTT *v.* UNEMPLOYMENT COMPENSATION COMMISSION.

1. UNEMPLOYMENT COMPENSATION—RECONVERSION OF WAR PLANT—
   LABOR DISPUTE—EVIDENCE.
      Under record showing that strike in plaintiff's plant began on
      September 8, 1945, and terminated on November 12, 1945 and
      testimony of plant manager supplied competent and credible
      evidence that reconversion of plant from use for war to
      peacetime production would have been completed and claim-
      ants re-employed in not exceeding three weeks, but for the
      strike, finding of appeal board of the unemployment com-
      pensation commission that claimants were disqualified from
      receiving benefits from September 29 to November 12, 1945, due
      to labor dispute in the plant was supported by the great
      weight of the evidence (Act No. 1, § 29, subd. [c], Pub. Acts
      1936 [Ex. Sess.], as amended by Act No. 246, Pub. Acts
      1943; § 38, as amended by Act No. 364, Pub. Acts 1941).

2. COSTS—UNEMPLOYMENT COMPENSATION BENEFITS—RECONVERSION
   OF PLANT USED FOR WAR PURPOSES.
      No costs are allowed in proceeding to determine whether or not
      employees who struck while reconversion of manufacturing
      plant from war to peacetime use was yet incomplete were dis-
      qualified from receiving unemployment benefits after re-em-
      ployment would have taken place but for the strike. (Act No.
      1, § 29, subd. [c], Pub. Acts 1936 [Ex. Sess.], as amended by
      Act No. 246, Pub. Acts 1943; § 38, as amended by Act No.
      364, Pub. Acts 1941).

BUSHNELL, C. J., and CARR, J., dissenting.

Appeal from Muskegon; Sanford (Joseph F.), J.
Submitted June 10, 1948. (Docket No. 50, Calendar
No. 44,058.) Decided November 12, 1948.

REFERENCES FOR POINTS IN HEADNOTES

[1] Construction and application of provision of social security
or unemployment compensation acts regarding disqualification
for benefits because of labor disputes or strikes. 135 A.L.R.
920; 148 A.L.R. 1309; 154 A.L.R. 672.

Certiorari by Viola Abbott and others to review order of the appeal board of the Michigan Unemployment Compensation Commission denying claimants compensation. Order reversed and claims allowed. Norge Division, Borg-Warner Corporation appeals. Reversed and order of appeal board affirmed.

*George D. Stribley,* for claimants.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Arthur W. Brown,* Special Assistant Attorney General, for Michigan Unemployment Compensation Commission.

*Glenn M. Coulter* (*Jack Newcombe,* of counsel), for Norge Division, Borg-Warner Corporation.

CARR, J. (*dissenting*). During the spring and early summer of 1945, plaintiffs herein were employed by the defendant Norge Division, Borg-Warner Corporation. Said employer, it is indicated, was operating under contracts with the Federal government in the production of war material. With the termination of hostilities the contracts were cancelled and it became necessary for the employer to make alterations in its plant in order to resume the manufacture of its regular products. Plaintiffs, approximately 566 in number, were laid off at various times during the summer of 1945 because of lack of employment for them while the work of reconversion was in progress.

On the 8th of September, 1945, a strike was called in the employer's plant, apparently by a union which was the sole bargaining agent for the employees, including plaintiffs herein. At that time the employer was not prepared to start its operations and it is conceded that none of the plaintiffs had been recalled to work. The strike, which in-

volved wages and working conditions for all employees, continued until November 12, 1945. The work of reconversion, which was in progress on September 8th, was discontinued apparently because of inability to move necessary material into the plant and because of the refusal of those engaged in the work of reconversion to cross the picket line that was established.

Plaintiffs filed claims for unemployment compensation under the statute,* which claims were allowed by the unemployment compensation commission. The referee sustained the action taken. The appeal board, however, after consideration of the testimony taken before the referee, came to the conclusion that during the period from September 29 to November 12, 1945, plaintiffs' unemployment was due to the labor dispute and that in consequence plaintiffs were not entitled to compensation during said period. Plaintiffs thereupon applied to the circuit court of Muskegon county for a writ of certiorari to review the determination of the appeal board. This action was taken in accordance with section 38 of the unemployment compensation act, above cited (Comp. Laws Supp. 1945, § 8485-78, Stat. Ann. 1947 Cum. Supp. § 17.540), which reads in part as follows:

"The findings of fact made by the appeal board acting within its powers if supported by the great weight of the evidence, shall, in the absence of fraud, be conclusive, but the circuit court of the county, in which the claimant resides or in which the employer's principal place of business in Michigan is located, if no claimant is a party to the case, or the circuit court for the county of Ingham shall have power to

---

*Act No. 1, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 347, Pub. Acts 1937; Act No. 324, Pub. Acts 1939; Act No. 364, Pub. Acts 1941; Act No. 18, Pub. Acts 1942 (2d Ex. Sess.); Act No. 246, Pub. Acts 1943; Act No. 9, Pub. Acts 1944 (1st Ex Sess.), and Act No. 335, Pub. Acts 1945 (Comp. Laws Supp. 1940, 1945, § 8485-41 et seq., Stat. Ann 1945 Cum. Supp. § 17.501 et seq.).

review questions of fact and law on the record made before the referee and the appeal board involved in any such final decision, but said court may reverse such decision of said appeal board upon a question of fact only if it finds that said decision of the appeal board is contrary to the great weight of the evidence."

In defining the issues presented, the trial court said:

"The questions involved are as follows: (1) If unemployment is originally caused by lack of work and a labor dispute develops during the continuance of the unavailability of work, is the employee disqualified from receiving unemployment compensation benefits from the date it is established that his unemployment is no longer caused by lack of work but rather is caused by the labor dispute? (2) Were the findings of fact made by the Michigan unemployment compensation appeal board substantiating their answer to question No. 1 above, contrary to the great weight of the evidence presented at the hearing before the referee on appeal from the determination of the Michigan unemployment compensation commission?"

On the first question stated the trial court sustained the conclusion of the appeal board that under section 29(c)(2) of the unemployment compensation act plaintiffs were not entitled to compensation for any period during which unemployment was caused by the strike. As amended by Act No. 246, Pub. Acts 1943, said section, insofar as material here, read as follows:

"An individual shall be disqualified for benefits:
*    *    *

"(c) For any week with respect to which his total or partial unemployment is due to a stoppage of work existing because of a labor dispute in the establishment in which he is or was last employed: Provided,

however, That no individual shall be disqualified under this section if he shall establish that he is not directly involved in such dispute. For the purpose of this section, no individuals shall be deemed to be directly involved in a labor dispute unless it is established: * * *

"(2) That he is participating in or financing or directly interested in the labor dispute which caused the stoppage of work: Provided, however, That the payment of regular union dues shall not be construed as financing a labor dispute within the meaning of this subsection."

However, after reviewing the evidence in the case, the trial judge found that the determination of the appeal board that plaintiffs' unemployment during the period from September 29 to November 12, 1945, was due to the labor dispute was contrary to the great weight of the evidence. He accordingly entered judgment reversing the order of the appeal board and granting compensation in accordance with the findings and conclusions of the unemployment compensation commission and the referee. Defendant employer has appealed, contending that the court erred in setting aside the order of the appeal board.

In support of its claim that the unemployment for which plaintiffs seek compensation was during the period in question due to the strike, the employer produced as a witness before the referee its plant manager. He testified in substance that when the strike was called on September 8, 1945, the reconversion work at the plant was progressing and that the employer intended to manufacture electric refrigerators, washing-machine units, and oil heaters. He stated also that at the time there were some 830 employees in the plant. Apparently some of these employees were engaged in reconversion work, certain parts of which were being performed by skilled

workmen not employees of the Norge Division, Borg-Warner Corporation. As a result of the strike, further continuance of the work of reconversion was prevented because of the impossibility of bringing necessary labor and material into the plant. The witness did not state specific facts as to the character or details of the work necessary for the reconversion or as to the material that was available for use in the work of reconversion and for the carrying on of the manufacturing operations that were contemplated. In answer to questions as to the period of time within which plaintiffs would have been called back to work had the strike not occurred, the witness at first answered:

"I think that would come under the hearing of expert testimony. As a person who is very familiar with the subject, I could probably give a very close surmise, but I certainly have no crystal ball."

In reply to the question as restated by counsel, the witness answered as follows:

"Based upon the amount of material that we had available, and the point at which our reconversion work was on September 8th, I would say that we would have had all of these people back in the plant within a period not exceeding three weeks from that date."

On the basis of the testimony of appellant's plant manager the appeal board found as a fact that if the strike had not occurred plaintiffs would have been recalled on or before September 29, 1945, and, hence, that during the balance of the period of the strike their unemployment was due to the labor dispute. Appellees insist that the testimony of this witness, read in its entirety, clearly indicates that it was based on conjecture, speculation and surmise. The trial judge found with this contention. A careful examination of the record convinces us that he came

to the correct conclusion. It is significant that the witness did not state the facts on which his opinion was based. Other than said opinion itself, there is nothing in the record to support the finding of the appeal board.

Obviously there were many elements that entered into the completion of the work of reconversion of the plant and the preparation for manufacturing operations in accordance with the employer's plans. In expressing his opinion, however, it will be noted that the witness referred merely to the material on hand and the progress of the work of reconversion up to that time. On the basis of his statement it is indicated that he did not give consideration to the obtaining of further necessary material or to the means available for completing the necessary changes in the plant. Quite possibly he assumed that such material would be forthcoming and that the work would have progressed after September 8th in like manner as prior to that date. Whether he had the right to indulge in such assumption, this record does not show. That further material was required to enable the employer to carry on its operations clearly appears. After the strike was ended, it is in evidence that operations were hampered because of inability to obtain deliveries of necessary materials. It further appears that the completion of the work of reconversion was also delayed, following the termination of the strike, because of difficulty in obtaining the necessary labor. As a result, the number of plaintiffs in this case is materially in excess of the difference between appellant's employees on its factory payroll on September 8, 1945, and the number so employed on February 26, 1946. Whether such difficulties, or others of like character, might have been encountered if the strike had not occurred is uncertain. The conclusion cannot be avoided that the opinion of the witness, quite

possibly based in part on a knowledge of facts not appearing in this record, necessarily rested, also, on assumptions that involved conjecture and speculation. Such an opinion may not properly be made the basis of a specific finding of facts.

Appellant emphasizes the claim that the witness in question was an expert. Doubtless as the manager of the plant he was familiar with the conduct of its ordinary business. It does not appear, however, that he had had experience in the reconversion of manufacturing establishments engaged in the production of munitions of war in such manner as to render them suitable for the manufacture of refrigerators, washing machines and oil burners. He had been employed by appellant as its plant manager since October, 1943. However, whether testifying as an expert, as a skilled observer, or as an ordinary witness, his opinion, in order to be given probative force, must have rested on a factual basis. Unless such was the case, his estimate or conclusion may not properly be regarded as establishing a material fact in controversy in the case. The conclusion itself may not be invoked to supply substantial facts necessary to support it. We may not assume on this record that the witness had knowledge sufficiently comprehensive to support his opinion and that he took into consideration all facts necessary for a proper conclusion. *Dreher* v. *Order of United Commercial Travelers of America,* 173 Wis. 173 (180 N. W. 815); *Hornby* v. *State Life Ins. Co.,* 106 Neb. 575 (184 N. W. 84, 18 A. L. R. 106). See, also, 11 R. C. L. p. 577; 32 C. J. S. pp. 164, 216, 219; *Dowagiac Manufacturing Co.* v. *Corbit,* 127 Mich. 473; *Callender* v. *Myers Regulator Co.,* 250 Mich. 298; *Zuidema* v. *Bekkering,* 256 Mich. 327; *Holmes* v. *J. W. Wells Lumber Co.,* 274 Mich. 166; *McDuffie* v. *Root,* 300 Mich. 286.

When plaintiffs were laid off in the summer of 1945 such action, it is conceded, was due to lack of work. On the hearing before the referee appellant undertook to establish by proof that the condition existing at the outset was changed and that from and after September 29th and for the duration of the strike, plaintiffs' unemployment was due to the labor dispute. Appellant failed to introduce competent evidence of sufficient weight to support a determination of the issue in its favor. It must be said that the finding of the appeal board was against the great weight of the evidence and that in consequence the trial court acted properly in setting it aside.

The conclusion indicated as to the principal question in the case renders it unnecessary to consider other matters discussed by counsel in their briefs. The judgment of the circuit court should be affirmed, with costs to appellees.

BUSHNELL, C. J., concurred with CARR, J.

NORTH, J. In this case the circuit judge of Muskegon county on certiorari reviewed and reversed the determination of the appeal board of the Michigan unemployment compensation commission which had held that plaintiffs' unemployment from September 29 to November 12, 1945, was due to a labor dispute in the establishment in which they were last employed, and therefore they were not entitled to unemployment compensation during that period. On the appeal to this Court Mr. Justice CARR has written for affirmance. I disagree and am of the opinion that the circuit judge erred in reversing the appeal board's determination on the ground that it was "contrary to the great weight of the evidence." Careful review of the record brings the conclusion that

the judgment entered in the circuit court should be reversed instead of being affirmed.

The facts as stated in Mr. Justice CARR's opinion need not be repeated, but a partial review of the testimony in the light of which the appeal board reached its decision is necessary. In a large measure the pertinent facts were stipulated, but the record thus made was supplemented by the testimony of Mr. John C. Buchanan, who for nearly two years preceding the strike, which began September 8 and ended November 12, 1945, was the manager of appellant's Muskegon Heights plant where the labor trouble occurred. We summarize the pertinent portion of Mr. Buchanan's testimony as briefly as possible. In substance he testified as follows:

I have been the manager of the Muskegon Heights plant since October 3, 1943. I am acquainted with the reconversion work that was being done in that plant in 1945. The regular employees of our plant were performing the reconversion work in cases where they were qualified to do so; but we also had outside contractors in the plant to speed the work up. In September, 1945, when the strike occurred, I had a schedule established as to when the reconversion work in all probability would be completed. As to the reconversion work at the time the strike occurred I would say it had progressed in relation to the complete reconversion program or schedule as follows:

In the department devoted to space heaters and washing machines, we were in very good shape. The reconversion in the metal fabricating plant was practically complete. The reconversion in the porcelain plant was within one day of being complete when the strike took place. The assembly lines for space heater production and for washing machine production were practically complete. The assembly line for production of refrigerating units was, I would say, about 50 per cent. complete; but we had a setup

operating for the production of the cooling units for the refrigerators. The only place that we were not in very good shape was the fabricating assembly. Everything else was practically ready to go. Our production schedule was complied with up to September 8th, and then, of course, the strike took place, and that was the end of it.

On September 1, 1945, the company had 830 employees and practically the same number on September 8th. These 830 employees would not be able to meet our schedule of production which had been adopted. The 830 were merely a skeleton force and were practically all maintenance people engaged in certain kinds of reconversion work. According to the way the production schedule was built up, we would have required approximately 800 additional employees within the next two weeks following September 8, 1945. It was just about the end of the first week in September that we had moved out of the plant the materials previously used in our war work and got everything squared away so we were ready to go back to work on our regular production. We had bought the raw material in anticipation of meeting our production schedule and the purchased material had been scheduled for delivery during the period of the strike; but delivery was prevented by a picket line which was established around the plant.

At this point in Mr. Buchanan's testimony he was asked the following questions and gave the following answers:

"*Q.* Mr. Buchanan, you testified that you are plant manager of the Norge Division, Borg-Warner Corporation, and have been for some time. You have further testified that you have worked directly on production schedules to meet certain production requirements during September, and subsequent months of 1945. You have further testified that it would be necessary to re-employ numerous addition-

al employees to meet those production schedules. Can you tell us, Mr. Buchanan, what period of time it would have taken to return the men or employees that you have mentioned it would be necessary to return to work to the employ of the Norge Division?

*"A. Based upon the amount of material that we had available, and the point at which our reconversion work was on September 8th, I would say that we would have had all of these people back in the plant within a period not exceeding 3 weeks from that date.*

"Q. Now, you mean 3 weeks from that date you are referring to, that date as of the strike, September 8, 1945?

"A. That is correct, yes.

"Q. Now, do I understand, Mr. Buchanan, that you have needed an estimated 800 more employees, but in your answer you referred to somewhat less than that.

"A. Oh no. I am referring to the people we would have needed. That is about 800 people.

"Q. Included in this 800 are the claimants presently involved today?

"A. Yes.

"Q. In other words, you need more than the present claimants?

"A. That is right.

"Q. And it was your answer that within 3 weeks at the longest the full amount would have been returned?

"A. That is my estimate, yes."

It fairly appears from the record that by reason of the variety of its products appellant's business was carried on in somewhat separated divisions. Among their products were refrigerators, washing machines, space heaters, et cetera. Obviously one or more of these divisions might have been in full operation prior to the time that the reconversion of the plant was fully completed. Even at the time of the trial, some reconversion work was still in prog-

ress. But without contradiction it appears from
Mr. Buchanan's testimony that within 3 or 4 days
after the strike was settled on November 12th, one
of their departments was set up and operating with
a skeleton crew which was soon supplemented by
rapidly filling in with additional employees. As to
two of the departments in the plant, Mr. Buchanan
testified:

"We actually had production under way in these
two departments, according to my record here, on
the 23d of November. Now let me explain there,
that we also operate a service department, and be-
cause we were so far behind on our service picture,
we tried to get the service department operating
first, and then we turned to these two departments.
We actually had people starting production there
on November 23d (11 days after the strike ended),
and according to my record here, we had actually
fabricated enough parts so that by December 6th
we had started our assembly line into operation, and
by December 11th we had a full crew."

Nowhere in the record is the testimony of Mr.
Buchanan contradicted by any direct testimony, nor
was it materially weakened by cross-examination.
The only phase of the record which might in any way
tend to minimize the probative force of Mr. Buchan-
an's testimony is that notwithstanding the strike
ended November 12, 1945, it was some months there-
after before appellant's plant was fully recondi-
tioned for the production of the articles which they
regularly manufactured. From this the inference
is sought to be drawn that Mr. Buchanan's testimony
that all of the plaintiffs in this case would have been
back at work within 3 weeks after September 8th,
is not credible. But it appears from the record that
the delay after the strike ended in reconditioning the
plant and resuming production was due to the fact
that, as the result of the strike and the picketing

of the plant, delivery of necessary materials was not only delayed as they had been during the strike; but by the time the strike had ended and thereafter, the procuring of the required materials was much more difficult as the result of the market condition; and further, the skilled laborers who when the strike began were working on this reconditioning job stopped their work and went elsewhere, which resulted in a delay of several weeks in getting them back to this reconditioning job. One example of this type appearing in the record is that of a skilled laborer who at the time of the strike had only one day's work to complete repairs on a porcelain enamel furnace, but it actually took two and one-half weeks after the termination of the strike before this skilled man could be gotten back to complete the one day's work. It further appears that in the weeks and months following the termination of the strike, labor troubles in plants operated by those furnishing supplies for appellant's operation prevented delivery of such materials to appellant, and in this manner at least much of the delay, which occurred after the strike terminated, was caused in the return to full production in appellant's plant.

In the light of the testimony just above noted, it can hardly be said that the circumstance of the ultimate delay in getting the plant into full operation in any very material way impairs the probative force of Mr. Buchanan's testimony, that had it not been for the strike the plaintiffs in this case would have been back on their jobs not exceeding 3 weeks after September 8, 1945.

Notwithstanding the record of the foregoing character the circuit judge brushed aside the testimony of Mr. Buchanan as "obviously based upon conjecture and guesswork and is contradicted by all the facts and circumstances in the case." The circuit judge noted that Mr. Buchanan's testimony was not

contradicted by any other direct testimony, but the judge's comment was, "Uncontradicted testimony is of little or no value when it is based upon conjecture and guesswork;" and further in his opinion the circuit judge said: "Circumstances existing before the strike and happenings thereafter are entitled to considerable weight in determining whether the plant manager's estimate as to when the claimants would have been re-employed can be accepted as more than a mere guess."

In affirming the holding of the circuit judge my Brother has reasoned much along the same line and states, "It is significant that the witness (Mr. Buchanan) did not state the facts on which his opinion was based." But my Brother further states in his opinion:

"After the strike was ended, it is in evidence that operations were hampered because of inability to obtain deliveries of necessary materials * * * (and) because of difficulty in obtaining the necessary labor. * * * Whether such difficulties, or others of like character, might have been encountered if the strike had not occurred is uncertain. The conclusion cannot be avoided that the opinion of the witness, quite possibly based in part on a knowledge of facts not appearing in this record, necessarily rested also on assumptions that involved conjecture and speculation. Such an opinion may not properly be made the basis of a specific finding of facts."

It is obvious both the circuit judge and my Brother in arriving at their respective conclusions have reviewed the same record that was before the appeal board; but to justify reversal of the holding of the appeal board both the circuit judge and my Brother have been compelled to totally disregard the testimony of Mr. Buchanan insofar as it bears upon the controlling question, that is: Was the unemployment

of plaintiffs from September 29 to November 12, 1945, caused by the strike in appellant's plant?

From the above quoted portions of the circuit judge's opinion and also from the opinion of Mr. Justice CARR, it quite conclusively appears that the conclusion of each of them was reached on the ground that the testimony of Mr. Buchanan was either incompetent or incredible. I cannot agree that this testimony was incompetent in that it was "based upon conjecture and guesswork" or that it was "mere surmise." Instead the witness detailed many facts and circumstances which justified receiving in evidence his testimony: "I would say that we would have had all of these people back in the plant within a period not exceeding 3 weeks from that date (September 8th)." This answer may be said to be opinion testimony, but even so the qualifications of the witness to give the answer appear in the record. This testimony stands in the record uncontradicted by any other direct testimony; nor is its credibility materially impaired by any or all of the facts disclosed by the record. It cannot be doubted but that the appeal board considered this testimony as persuasive, competent and credible. In rendering its decision the appeal board said:

"We find the record fully supports the employer's contention. * * * From September 8, 1945 to September 29, 1945 there were two reasons for claimants unemployment, namely lack of work and the labor dispute. The record however establishes that sufficient materials were available and that the employer's reconversion program had progressed to the point that as of September 29, 1945, all of the employees involved herein would have been recalled to work were it not for the strike then in existence. * * *

"It is held that the claimants involved herein will be disqualified for unemployment benefits under the

provisions of section 29 (c) of the act (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 246, Pub. Acts 1943) from September 29, 1945 and for the duration of their unemployment due to the stoppage of work existing because of the labor dispute in the establishment in which they were last employed."

The review of the appeal board's determination by the circuit court and by this Court is restricted by the following statutory provision:

"The findings of fact made by the appeal board acting within its powers if supported by the great weight of the evidence, shall, in the absence of fraud, be conclusive, but the circuit court * * * shall have power to review questions of fact and law on the record made before the referee and the appeal board involved in any such final decision, but said court may reverse such decision of said appeal board upon a question of fact only if it finds that said decision of the appeal board is contrary to the great weight of the evidence." Act No. 1, § 38, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 364, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 8485-78, Stat. Ann. 1947 Cum. Supp. § 17.540).

Under the record the determination of the appeal board should be and is affirmed, and the judgment of the circuit court that "claimants as plaintiffs in this cause * * * recover against the defendants, unemployment compensation from September 29, 1945 to and including November 12, 1945, as provided by statute, unless otherwise disqualified," is reversed. No costs are awarded and the case is remanded to the Michigan unemployment compensation commission.

SHARPE, BOYLES, REID, DETHMERS, and BUTZEL, JJ., concurred with NORTH, J.