HARDING GLASS COMPANY *v.* WILLIAM B. CRUTCHER ET AL AND BILL LANEY, COMM'R. OF LABOR

5-4507                                          426 S. W. 2d 403

Opinion delivered April 15, 1968

*Shaw, Jones & Shaw*, for appellant.

*McMath, Leatherman, Woods & Youngdahl* and *John P. Sizemore* and *Luke Arnett*, for appellees.

J. FRED JONES, Justice. This appeal from the Sebastian County Circuit Court involves an unemployment compensation case in which the employer is resisting the claims of a number of employees on the grounds that the employees are ineligible for benefits because their unemployment was brought about by a labor dispute within the meaning of Ark. Stat. Ann. § 81-1105 (f) (Repl. 1960), which is as follows:

"If so found by the Commissioner, no individual may serve a waiting period or be paid benefits for the duration of any period of unemployment if he lost his employment or has left his employment by reason of a labor dispute other than a lockout at the factory, establishment, or other premises at which he was employed (regardless of whether or not such labor dispute causes any reduction or cessation of operations at such factory establishment or other premises of the employer), as long as such labor dispute continues, and thereafter for such reasonable period of time (if any) as may be necessary for such factory, establishment, or other premises to resume normal operation. Provided, however, that this subsection shall not apply if it is shown that he is not participating in or directly interested in the labor dispute; and he does not belong to a grade or class of workers of which, immediately before the commencement of the labor dispute there were members employed at the factory, establishment or other premises at which the labor dispute occurs, any of whom are participating in or directly interested in the labor dispute. Provided, that if in any case, separate branches of work which are commonly conducted as separate businesses in separate premises, are conducted in separate depart-

ments of the same premises, each such department shall, for the purpose of this subsection, be deemed to be a separate factory, establishment or other premises.''

The facts are not seriously in dispute and may be briefly stated as follows: Appellant manufactures glass at its plant in Fort Smith and appellees are members of Local No. 4, United Glass and Ceramic Workers Union and regularly employed at appellant's plant. A separate class of employees at the plant were members of Local No. 7, Window Glass Cutters League of America. The collective bargaining agreement between appellant and Local No. 7 expired in June of 1966, and thereafter Local No. 7 periodically picketed appellant's plant. When the dispute arose with Local No. 7, about 285 of the appellee members of Local No. 4 were placed on a 'lay-off status and started drawing unemployment compensation benefits without question. Twenty-five members of Local No. 4 were not placed on a lay-off status and these employees crossed the picket line established by Local No. 7 and continued to work until October 10, 1966.

The collective bargaining agreement between appellant and Local No. 4 was to have expired on August 1, 1966, but was verbally extended from time to time. On October 10, 1966, the president of Local No. 4 advised appellant that Local No. 4 employees did not have a contract and were not going to continue to work. The 25 employees who had continued to work until October 10 failed to return to work on that date and the other 285 employee members of Local No. 4 remained on a lay-off status. A number of Local No. 4 employees (appellees) were requested to return to work at various times between October 10 and November 16, 1966, and refused to do so. On November 16, 1966, a new contract was signed by appellant and Local No. 4 and the appellees returned to work as requested after that date. The claims involve a period of time from October 10,

1966, until the claimant employees were requested to return to work after October 10, 1966.

The decision of the Board of Review, which was affirmed by the trial court, is as follows:

"The determination denying benefits to the claimants who left their work on October 10 due to the labor dispute was correct and is affirmed. The determination denying the other claimants benefits from the date they were directed to report to work and failed to do so was correct and is affirmed as they became a part of the dispute or participated in the dispute by their refusal to report to work as directed. The determination of the Agency denying the claimants benefits subsequent to November 19, the end of the week the dispute was settled, is reversed because the lack of production was not caused by this labor dispute."

On appeal to this court the appellant employer designates one point relied on for reversal, as follows:

"The circuit court erred in affirming the findings of the Arkansas Employment Security Division wherein the Employment Security Division allowed unemployment compensation benefits to certain of the appellees during the period of October 10, 1966, to November 16, 1966."

The appellees had no interest in the labor dispute in which members of Local No. 7 were involved. In fact they crossed the picket line established by Local No. 7 and were unaffected by the dispute with Local No. 7 except that a slowdown in production was probably caused by the dispute with Local No. 7 and resulted in the layoff of appellees prior to October 10, 1966. So, the fact situation presented on this appeal is one in which all regular employees, with the exception of 25, were laid

off for lack of work and were entitled to, and were receiving, unemployment compensation benefits. While these employees were still on lay-off status for lack of work and were still drawing benefits, the collective bargaining contract of their union expired and the employer was advised that none of appellee members of Local No. 4 (including the 25 who had not ceased work) would continue to work without a contract. The 25 who had worked all along failed to report for work as usual following the notice to the employer, and the remaining employees who were on lay-off status and drawing unemployment benefits, were not notified that work was available nor were they requested to return to work until sometime after notice had been given to the employer that they would not return without a contract.

The question then, boils down to whether the employees who were laid off for lack of work and who were drawing unemployment benefits, were still entitled to draw unemployment benefits until they were notified to return to work and refused to do so. In other words, does notice to the employer by the union president that employees do not intend to work without a contract, suspend the right to continued compensation payments to those employees who are on a lay-off status and already out of work when the notice is given and a labor dispute arises, or is it necessary that such employees be notified to return to work and refuse to do so before their unemployment benefits are suspended?

We are of the opinion that such employees should be notified to return to work and refuse to do so before the payment of their unemployment compensation benefits should be suspended.

As we understand the record, the appellant contends that there is only one labor dispute involved in this case; that the only labor dispute involved is between appellant and appellees and arose on October 10, 1966, when the president of Local No. 4 advised the ap-

pellant that appellees would not continue to work without a contract and would no longer cross the picket line established by Local No. 7, and that because of this dispute the appellees who were on lay-off status when the dispute arose, forfeited their rights to unemployment compensation benefits when it was shown that the 25 employees who had worked on October 9, 1966, participated in the dispute by failure to report for work on October 10, and since appellees belonged to the same grade or class of workers as the 25 who immediately before the commencement of the labor dispute were employed in appellant's plant and participated in the dispute by failure to report for work available to them.

Subsection (f), supra, provides that ''no individual . . . may be paid benefits . . . if he lost his employment or has left his employment by reason of a labor dispute. . . . '' It further provides that ''this subsection [f] shall not apply if it is shown that he [the employee] is not participating in or directly interested in the labor dispute; and he does not belong to a grade or class of workers of which, immediately before the commencement of the labor dispute there were members employed at the factory . . . at which the labor dispute occurs, any of whom are participating in or directly interested in the labor dispute.''

Now, assuming that subsection (f), supra, *does apply* to the appellees who were not working immediately before the commencement of the labor dispute, because it was *not shown* that they *did not belong* to the same grade or class as the 25 workers who *were working* immediately before the commencement of the dispute and who *did participate* in the dispute, still the question remains; did these employees lose or leave their employment ''*by reason of a labor dispute?*'' To us the record seems clear that they did not. We conclude that the appellees did not lose or leave their employment by reason of the labor dispute which arose on October 10, 1966; but that they remained on a lay-off status and did not par-

ticipate in the labor dispute until they were notified to return to work and they failed to do so. For it was then, and only then, that they lost or left their employment *by reason of the labor dispute.*

Our decision in the case of *Fort Smith Chair Co.* v. *Laney, Commissioner,* 238 Ark. 636, 383 S. W. 2d 666, relied on by both the appellant and the appellees, does not quite reach the situation presented in the case at bar. In the *Chair Co.* case a labor dispute arose on May 21, 1961, while Ballard, Wilson and Rhodes were on layoff because of lack of business. They lost or left their employment *by reason of a labor dispute,* however, when they were notified to return to work on June 13 and they refused to cross a picket line and return to work. In the *Chair Co.* case the employees' rights to benefits between May 31, 1961, when the dispute arose, and June 13, when they were notified to return to work and refused to do so, were not in issue. This corresponding period is the only one that is in issue in the case at bar.

In the *Chair Co.* case, the claim was for benefits covering a period after the employees were notified to return to work and they refused. In the case at bar, the claims are for the period of time after the labor dispute arose, but before and until appellees were notified to return to work and they refused to do so. In the *Chair Co.* case, after the employees were notified to return to work they refused to do so because of the labor dispute, thereby participating in and becoming a part of that dispute. In the case at bar, until such time as appellees were notified to return to work, they had no opportunity or obligation to return or refuse, so it can hardly be said that they were participating in the dispute until they were afforded an opportunity to do so.

In 28 A.L.R. 307 § 9, is found the following:

"While it seems clear that if a strike occurs during a layoff imposed by the employer for its own rea-

sons, the statutory disqualification for benefits where work is stopped because of a labor or industrial dispute will come into operation during the period following the strike, the cases also indicate that disqualification will not occur unless the employer notifies the striking employees that work is available for them.

"If unemployment is originally caused by a lack of work, and a labor dispute develops during the continuance of the unavailability of work, such labor dispute does not disqualify the employee until work becomes available and he refuses the work because of the labor dispute. *Muncie Foundry Div. of Borg-Warner Corp.* v. *Review Board* (1944) Ind. App. 475, 51 NE 2d 891.

"In *Employees of Lion Coal Corp.* v. *Industrial Commission* (1941) 100 Utah 207, 111 P 2d 797, where a coal operator voluntarily caused work to cease sometime prior to the calling of a general strike, it was held that there must be some evidence given and something shown by such operator to indicate when it desired work to begin again, from which it might be found that the stoppage of work was no longer due to the operator's act but was due to a strike within the meaning of the statute."

The Employment Security Act was intended to withhold benefits from those who bring about their own unemployment by bringing about or participating in a labor dispute. *Knox Consol. Coal Corp.* v. *Review Board*, (1942 Ind. App.), 43 NE 2d 1019 reversed on another point in 221 Ind. 16, 46 NE 2d 477.

We conclude that the appellees in the case at bar did not bring about their own unemployment by bringing about, or participating in, a labor dispute until they were notified to return to work following their layoff and they joined in the labor dispute by failing to return to work.

The judgment of the trial court is affirmed.