## RICHARD A. LEHMANN AND OTHERS v. WESTERN AIRLINES, INC.
## COMMISSIONER OF MANPOWER SERVICES, RESPONDENT.

188 N. W. (2d) 883.

July 16, 1971—No. 42583.

*Hvass, Weisman, King & Allen* and *Reed K. MacKenzie,* for relators.

*Thomas J. Greene* and *Richard T. Powers,* for respondent employer.

*Warren Spannaus,* Attorney General, *Jerome D. Truhn,* Solicitor General, *Peter C. Andrews,* Assistant Attorney General, and *William A. Peters,* Special Assistant Attorney General, for respondent commissioner.

MURPHY, JUSTICE.

Certiorari to review a determination of the commissioner of employment security (now the commissioner of manpower services) holding that the claimants were not entitled to unemployment compensation.

The employer, Western Airlines, Inc., has its base of operations at the Twin Cities International Airport. The claimants, 36 in number, were engaged in clerical work as fleet and passenger service employees. Their work depended upon the operation of the employer's aircraft. They are all members of the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, Lodge 3010 (hereinafter referred to as "BRAC"). Western Airlines also employed 125 mechanics at its maintenance base. These mechanics were represented by the International Brotherhood of Teamsters,

Local 359. They were responsible for the maintenance and repair work on all of Western's aircraft at the Twin Cities airport.

On July 28, 1969, after contract negotiations had failed, a strike was begun by the mechanics which resulted in a complete shutdown of Western's entire United States operations. Prior to the strike, Western's Twin Cities operation had daily incoming and outgoing flights of 10 Boeing 707 jet aircraft, 12 Boeing 720-B jet aircraft, and 6 Boeing 737 jet aircraft. The strike was totally effective and, on July 29, 1969, all of Western's aircraft had ceased operating. As a consequence, the claimants were furloughed or laid off.

The strike was anticipated by the claimant members of BRAC. They did not recognize, condone, sanction, or in any participate in the strike. They were authorized by their officials to cross the teamsters' picket line.

Shortly after the discontinuance of commercial operations by Western, each of the claimants registered for work and filed an appropriate claim for unemployment benefits at the local offices of the Minnesota Department of Employment Security. It was determined by claims deputies for the department that each of the claimants had lost his or her job because of a labor dispute in existence at the employer's establishment and that each was therefore disqualified for benefits for each week in which such labor dispute was in progress. The strike was terminated on August 16, 1969. From the record it would appear that Western kept two BRAC members employed throughout the strike. Most of the BRAC members returned to their jobs after the strike ended.

■■■ It is contended that the record does not support the finding that the claimants lost their jobs because of a strike resulting from a labor dispute at the employer's establishment. The general subject of qualification for unemployment compensation within the provisions of Minn. St. 268.09, subd. 1(5), formerly § 268.09, subd. 1(6), and 179.01, subd. 7, has been fully

discussed in prior decisions of this court.[1] The present appeal raises no points which have not already been fully considered by those decisions, and beyond the brief observations which follow, it is unnecessary to further expand upon them.

In essence, the claimants insist that they were innocent victims of a strike situation which was beyond their control; that denial of benefits under the circumstances is contrary to the spirit of fairness inherent in the policy of the law; and that we should reverse or modify prior decisions which have held that an employee may be disqualified from benefits even though he has not participated in the strike. This view is articulated in a dissent to the decision of the Appeal Tribunal which points out that "[t]he existing statute does not go far enough, is not broad enough and did not anticipate this particular type of situation. A more liberal and definitive interpretation of the statute and particularly a better understanding of the nature of labor disputes in general is required by this case. The employees of Local 3010 supported their union's position on the day the strike started, July 28, 1969, and on all subsequent days, by not participating in the labor dispute whether they were working or laid off from work by [the employer]."

While there is much in the foregoing statement that would appeal to natural concepts of fairness, we are necessarily controlled by statute which expresses a legislative intent that disqualification may result under the circumstances present here despite the complete absence of fault on the part of the nonparticipating employee. In construing Minn. St. 1949, § 268.09, subd. 1(6), now Minn. St. 268.09, subd. 1(5), we pointed out in Nord-

---

[1] Nordling v. Ford Motor Co. 231 Minn. 68, 42 N. W. (2d) 576, 28 A. L. R. (2d) 272; Bucko v. J. F. Quest Foundry Co. 229 Minn. 131, 38 N. W. (2d) 223, 34 Minn. L. Rev. 271; Ayers v. Nichols, 244 Minn. 375, 70 N. W. (2d) 296; Easthagen v. Naugle-Leck, Inc. 260 Minn. 198, 109 N. W. (2d) 556; Adelsman v. Northwest Airlines, Inc. 267 Minn. 116, 125 N. W. (2d) 444; Koll v. Egekvist Bakeries, Inc. 259 Minn. 287, 107 N. W. (2d) 373; and the more recent case of Johnson v. Ford Motor Co. 289 Minn. 388, 184 N. W. (2d) 786.

ling v. Ford Motor Co. 231 Minn. 68, 74, 42 N. W. (2d) 576, 580, 28 A. L. R. (2d) 272, 278:

"Minnesota is now one of nine states providing for a blanket disqualification in which the question of participation, financing, or interest in the strike or labor dispute has no further bearing upon the question of disqualification."

The foregoing view was elaborated upon in Ayers v. Nichols, 244 Minn. 375, 380, 70 N. W. (2d) 296, 299, where the legislative history of the act was reviewed:

"In our original act, Ex. Sess. L. 1936, c. 2, § 7(d), disqualification due to a labor dispute was based on a work stoppage, and then only if the claimant was participating in or financing the labor dispute. Our original act was similar to that adopted by most of the states. When we amended the act in 1943 (L. 1943, c. 650, § 5[F]), neither participation nor work stoppage were any longer determinative, but all who were unemployed by virtue of the strike, regardless of whether there was a work stoppage or not, were disqualified during the continuance of the strike."

Under the circumstances, we are not warranted in giving the statute a different interpretation even though it might appear from the record that the policy of the law may, in some instances, operate unfairly. It is not for the court to encroach upon the legislative function. The arguments contained in claimants' brief should be addressed to the legislature.

Claimants further argue that there is no proof in the record that the employees lost their employment because of the strike. They argue: "It is true that if the planes do not fly, the Claimants have no work. The issue is not whether or not the planes are flying, but whether or not they *can* fly." In support of this argument, they rely on Adelsman v. Northwest Airlines, Inc. 267 Minn. 116, 125 N. W. (2d) 444. We are unable to agree that Adelsman has application to the facts before us. We held there that there was a failure of proof on the part of the employer as

to causal connection between the suspension of part of its services due to a strike of flight engineers and the termination of its entire operation. Unlike the situation in Adelsman, the strike here was totally effective. The mechanics refused to service any of the employer's aircraft. It cannot be seriously argued that without mechanics to service and maintain equipment to insure the safety of passengers, the employer would have been able to carry on at least a part of its activities, as in the Adelsman case.

Nor can we agree that there was a failure of proof to support the finding of the commissioner with respect to causal connection between the strike and the suspension of Western's services and the termination of claimants' employment. The claimants themselves recognize that no planes were being serviced. One of the employees stated: "I am presently unemployed due to a strike against my employer by the mechanics. * * * I would now be employed but for the strike." Another employee testified upon examination:

"Q. And can you tell us of your own knowledge what you note to have been the cause of that work stoppage?

"A. The basic reason Western Airlines was out of work at that time was because of a mechanic's strike.

* * * * *

"Q. And all of these people reported to work until the company laid them off because of the work stoppage resulting directly from the strike by the Mechanics?

"A. Right."

On review, the findings of the commissioner in a proceeding of this nature should be viewed in the light most favorable to the decision, and where there is evidence reasonably tending to sustain them, they will not be disturbed. Lewis v. Minneapolis Moline, Inc. 288 Minn. 432, 181 N. W. (2d) 701. We are satisfied that the record fairly supports the determination of the commissioner that the claimants' unemployment was caused by a strike resulting from a labor dispute in progress at the establishment where they were employed.

Affirmed.