IN RE CLAIM FOR BENEFITS OF ARDEN E. TRIPP AND OTHERS v. ALLEY CONSTRUCTION COMPANY, INC., AND OTHERS. DEPARTMENT OF MANPOWER SERVICES, RESPONDENT.

210 N. W. 2d 668.

September 14, 1973—No. 43670.

---

[1] See, 1 Larson, Workmen's Compensation Law, § 22.23.

*Dorsey, Marquart, Windhorst, West & Halladay, Curtis L. Roy, David A. Ranheim,* and *Emery W. Bartle,* for relators.

*Robins, Davis & Lyons, Thomas C. Kayser, Larry R. Fredrickson, Sigal & Savelkoul,* and *Samuel I. Sigal,* for respondents.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, *Peter C. Andrews,* Assistant Attorney General, and *Frank W. Levin,* Special Assistant Attorney General, for respondent Department of Manpower Services.

Heard before Knutson, C. J., and Otis, Peterson, and Todd, JJ.

OTIS, JUSTICE.

This matter is brought to the court by 26 employers to review a decision of the commissioner of the Department of Manpower Services affirming a decision of an appeal tribunal which held that some 1,500 heavy equipment employees were not disqualified from receiving unemployment benefits by reason of their taking part in a strike. Benefits were approved by claims deputies, giving rise to the employers' initial appeal.

The principal issue is whether employees who were expected to report for work when various highway projects began in the spring were disqualified from receiving benefits if they participated in a strike before their employers specified a date on which they were to return. As to that issue, we hold that employees are

not disqualified from receiving benefits if they take part in a strike at a time when they have not been given a specific time to commence work and the evidence permits a finding that a number of variable factors other than the strike may have prevented employees from being rehired.

The second issue is whether all 26 employers agreed to be bound by the decision of the commissioner rendered in connection with the hearings granted 3 of the employers as test cases. We hold that all of the employers are bound by the principles of law adopted by the commissioner, to the extent we approve those rules, but they are not foreclosed from individually presenting facts to support their claims that particular employees were working at the time the strike was called and left or lost their employment because of the strike.

Relators are all contractors in the highway heavy construction industry. For collective bargaining purposes they belong to a trade association known as Associated General Contractors of Minnesota. The employees in this litigation are members of five unions: Operating engineers, laborers, teamsters, carpenters, and cement masons. An agreement between the contractors and the unions expired December 31, 1969. The parties were unable to reach a new agreement by April 1, 1970, at which time the operating engineers conducted a statewide strike. Within a few days they were joined by the other four unions and all remained on strike until May 28, 1970. Thereupon, the contractors filed with the Department of Manpower Services blanket protests against their granting unemployment benefits to members of the union which, under the law then applicable, effectively prevented the payment of benefits at that time to any of the former employees of the contractors.

Because of the hardships thus imposed on striking employees, the appeal tribunal encouraged counsel for the contractors and the employees to expedite the hearings. To that end, the parties agreed to present evidence with respect to the claims of three contractors: Peter Lametti Construction Company, McDonald

Associates, Inc., and Orfei and Sons, Inc. Three categories were to be considered and adjudicated: (1) Employees who were working at the time of the strike and left their jobs as a result of the strike; (2) employees who were not working at the time of the strike but would have been called back to work between April 1 and May 1, 1970, had there not been a strike; and (3) employees who were not working on April 1 and for a variety of reasons would not have been called back by their employers.

The findings and decision of the appeal tribunal, which were affirmed by the commissioner, determined that none of the employees was actually working on the date the strike began. The tribunal held as a matter of law that employees were not subject to the statutory disqualification unless they actually left their jobs because of the strike. We hold that this too narrowly construes the disqualification statute and that employees who were assigned to specific jobs on particular dates were also disqualified from receiving benefits notwithstanding the fact they may not have been actually working on the day the strike began.

■ Minn. St. 268.03 is a statement of public policy dealing with "involuntary unemployment" and approving the provision of benefits for "persons unemployed through no fault of their own." [1] The statute we are here construing is § 268.09, subd. 1, which provides in part:

"An individual shall be disqualified for benefits:

\*　\*　\*　\*　\*

"(5) If such individual has left or partially or totally lost his employment with an employer because of a strike or other labor dispute."

[1] The purposes and policy of the statute have been fully discussed in Nordling v. Ford Motor Co. 231 Minn. 68, 42 N. W. 2d 576 (1950); Anson v. Fisher Amusement Corp. 254 Minn. 93, 93 N. W. 2d 815 (1958); Johnson v. Wilson & Co. 266 Minn. 500, 124 N. W. 2d 496 (1963); Adelsman v. Northwest Airlines, Inc. 267 Minn. 116, 122, 125 N. W. 2d 444, 448 (1963); Johnson v. Ford Motor Co. 289 Minn. 388, 393, 184 N. W. 2d 786, 790 (1971); and Lehmann v. Western Airlines, Inc. 291 Minn. 6, 9, 188 N. W. 2d 883, 885 (1971).

The contractors argue with considerable force that all of the members of the unions who were on strike lost their employment within the meaning of the statute by voluntarily taking themselves out of the labor market between April 1 and May 28, 1970. The striking employees and the commissioner of manpower services argue with equal vigor that a laborer cannot lose his employment until he is offered employment. The employees concede that "[i]f the relators proved that any claimants left work or were, in fact, called back to work, but refused to work, they would be disqualified." However, they go on to point out that none of the claimants was notified to report for duty at a particular date and argue convincingly that the contractors have failed to sustain their burden of proving particular employees were actually hired by them but failed to report for work. With the exceptions hereafter noted, we agree that employees who have not been notified of the time and place where work is available are not disqualified because they are engaged in a strike.

There is validity to the showing made by the claimants that the availability of employment in the spring of 1970 hinged on a number of variable factors unrelated to the strike. Virtually all of the employees who were members of the various unions engaged in highway construction were unemployed during the winter months, and their right to benefits during that time is undisputed. Although it was the invariable practice to rehire many of the employees who had previously worked for a particular contractor, the time and place work was to begin depended to a great extent on favorable weather conditions. Although it may be assumed that sometime between April 1 and May 28 most of these claimants would have gone back to work, neither the Department of Manpower Services nor the court is in a position to determine with precision which employees would be rehired and on what dates they would return to work, absent any evidence that the employers gave them notice of the date they were to report. There were a number of other factors which determined the time when work was to begin, including the break-

down of equipment, the necessity for obtaining easements, and the unavailability of construction projects.

We subscribe to the views expressed in Harding Glass Co. v. Crutcher, 244 Ark. 618, 426 S. W. 2d 403 (1968). Under a statute similar to our own, the Supreme Court of Arkansas held that employees who were on layoff status for lack of work and drawing benefits were not disqualified during a strike until they were notified to return to work and refused to do so. The contractors argue with some justification that this would be a futile gesture while the strike was in progress, citing Jozwik v. Michigan Employment Security Comm. 30 Mich. App. 506, 186 N. W. 2d 755 (1971). Be that as it may, such notice would pinpoint the jobs which were available and the employees who were selected to fill them. More important, it would make a record of those who were unemployed because of the strike and those who were unemployed for reasons unrelated to the strike. Had that been done, we would have no difficulty in holding that the employees had *lost* their employment because of the strike even if they had not *left* their employment for that reason.[2]

■ The record in this case is by no means clear with respect to several employees who had actually been working before April 1 but were temporarily laid off because of a breakdown in equipment. They were employees of Lametti and identified as Edward Charpentier, E. E. Charpentier, Henry Huff, and Joseph Dabruzzi. Claimants acknowledge in their brief that these men were to resume work on April 1, but contend that their employer did not prove that they lost their employment because of the strike. There was competent testimony that these men were working on the so-called Griggs-Stanford project in March 1970 and were

---

[2] This conclusion finds support in Employees of Lion Coal Corp. v. Industrial Comm. 100 Utah 207, 111 P. 2d 797; Matson Terminals, Inc. v. California Employment Comm. 24 Cal. 2d 695, 151 P. 2d 202; American-Hawaiian SS. Co. v. California Employment Comm. 24 Cal. 2d 716, 151 P. 2d 213 (1944); Unemployment Comp. Comm. v. Aragon, 329 U. S. 143, 67 S. Ct. 245, 91 L. ed. 136 (1946).

238

laid off for 4 days prior to April 1, but were called on March 31 to return to work the following day. Apparently they failed to report because of the strike. In this state of the record, under the rule we here adopt they would be disqualified from benefits notwithstanding the fact that they were out of work temporarily while repairs were being made. We have difficulty discerning whether other employees may have been in this same category. On remand to the Department, it will be incumbent on the commissioner to reconsider the qualifications for benefits of these employees and others similarly situated, if any there be.[3] It is not necessary, as the commissioner seems to have held, that employees "drop their tools" as a result of the strike in order to be disqualified from receiving benefits.

■ At the conclusion of the hearings, when the appeal tribunal rendered its decision in favor of the claimants on all issues, counsel for the contractors sought to proceed with the claims of the remaining 23 members of the Associated General Contractors. The appeal tribunal ruled that counsel had stipulated that all of the contractors would be bound by the results of the three cases submitted. While the intent of the stipulation is imprecisely articulated, a fair reading of the positions taken by the attorneys persuades us that the contractors intended only to bind all members to the principles of law which emerged from the hearings and not to foreclose the right of individual members to prove particular employees were actually on the job and left their employment at the time the strike began. Before the hearings commenced, counsel for the contractors stated, among other things:

"I wanted to know, after all the procedural discussions, again to reiterate, at any rate my understanding, is that we will be proceeding with the first three or four but this does not preclude with all of the remaining companies in the event that all factual determinations are necessary."

---

[3] All of the 1,500 claimants have in fact received benefits. Consequently, this litigation does not affect them but only bears on the employers' experience record for purposes of determining their rates.

Although, after the tribunal refused to hear evidence from other contractors, counsel continued to stress the theory that other employers were entitled to litigate the matter of when they would have called back claimants, that matter was properly laid to rest. The position of counsel and the decision of the tribunal are, however, somewhat obscure as they relate to the right of the other members of the Associated General Contractors to present evidence that employees were actually on the job when the strike began and left their employment because of the strike. Before the hearings began, counsel for some of the claimants asked the chairman if there would be a ruling with respect to those who were working at the time of the strike and were laid off or left because of it. The chairman thought that category would not present a problem. Counsel for the contractors in this colloquy stated he didn't see that there was any question of fact as to such employees. The appeal tribunal held that "[n]one of the claimants were working on April 1, 1970." Nevertheless, the brief of the Department of Manpower Services makes this concession:

"Although relators introduced evidence which would permit a finding that a few claimants were working at the time the strike began and should have been disqualified because they left employment because of a strike, the hearings were conducted on the theory that claimants were either all entitled to benefits or all were disqualified. As has been shown, relators failed to establish that all were disqualified."

Specifically, the employers' exhibit A lists 58 employees who would be disqualified if, as the exhibit indicates, they were "claimants working at the time of the strike." [4]

---

[4] The following employers are shown to be in this category: Alley Construction Company, Inc.; Atlas Pile Driving Co.; Buesing Bros. Trucking; Hoover Construction Co.; Hurley Construction Company; Northern Contracting; Olm Joint Venture; Oster & Pederson-Foley; Robert R. Schroeder Const., Inc.; Sorensen Brothers, Inc.; Sullivan Construction Company; Ulland Brothers, Inc., Austin, Minnesota; Ulland Brothers, Inc., Cloquet, Minnesota.

We are of the opinion and hold that the stipulation referred to did not foreclose the right of other contractors to prove that employees came squarely within the disqualifications of the statute and should not have received benefits because they were working when the strike began. Accordingly, the matter is remanded with directions that the commissioner grant those contractors hearings for the limited purposes we have described.

Reversed and remanded.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.