Bobby TOSH et al *v.* A.T.I., Inc.
(BATESVILLE R & P CORP., INC.) and
Dale CLINE, Director of Labor for the
State of Arkansas

75-234                              534 S.W. 2d 242

Substituted Opinion on Rehearing
delivered March 22, 1976

*Youngdahl & Larrison,* for appellants.

*Herrn Northcutt,* for appellees.

JOHN A. FOGLEMAN, Justice. This is an unemployment compensation case. The Appeals Referee and the Board of Review found appellants were not entitled to unemployment benefits because their unemployment was due to a labor dispute in which they were participating as active members of their union. Ark. Stat. Ann. § 81-1105 (f) (Repl. 1960) in pertinent part provides that an employee cannot "be paid benefits . . . if he lost his employment or has left his employment by reason of a labor dispute . . . " unless " . . . it is shown that he is not participating in or directly interested in the labor dispute . . . " For reversal appellants contend that, since they were laid off for lack of work before the calling of a strike, they are entitled to draw unemployment benefits until notified by their employer to return to work and they refuse to do so, citing *Harding Glass v. Crutcher,* 244 Ark. 618, 426 S.W. 2d 403. The thrust of appellants' argument is that appellants were on a layoff status and already out of work when the labor dispute arose and, consequently, did not leave or lose their employment "by reason of a labor dispute" within the meaning of § 81-1105 (f). Further, since they were not notified to return to work and given an opportunity to refuse, a fact issue does not exist and, therefore, it must be said, as a matter of law, that they have not lost their employment by reason of participation in a subsequent labor dispute.

Findings of fact by the Board of Review in Employment Security cases are conclusive on appeal if supported by substantial evidence. *Terry Dairy Products Co., Inc. v. Cash, Commissioner of Labor,* 224 Ark. 576, 275 S.W. 2d 12; Ark. Stat. Ann. § 81-1107 (d) (7) (Repl. 1960). On our review of such findings of fact to determine whether they are supported by substantial evidence, we consider the evidence and all reasonable inferences deducible therefrom in the light most favorable to the appellee and affirm if there is any substantial

evidence to support the finding of the fact finder. *Campbell* v. *Athletic Mining & Smelting Co.,* 215 Ark. 773, 223 S.W. 2d 499; *Green* v. *Lion Oil Co.,* 215 Ark. 305, 220 S.W. 2d 409; *Employers Casualty Co.* v. *United States Fidelity and Guaranty Co.,* 214 Ark. 40, 214 S.W. 2d 774; *Thrifty Rent-A-Car* v. *Jeffrey,* 257 Ark. 904, 520 S.W. 2d 304; *Yellow Cab Co.* v. *Sanders,* 250 Ark. 418, 465 S.W. 2d 324. In *Thrifty Rent-A-Car* we reiterated that we consider only the evidence of the appellee or that portion of the evidence most favorable to appellee to determine the existence of substantial evidence. In the case at bar, we are of the view that the issue is one of fact and not a question of law and there is substantial evidence to support the Board's finding.

On March 11, 1974, the appellants were told that a boiler had blown up and that they would be notified to return to work as soon as it was repaired, but that there would be no work until they were notified. Thereafter, the executive committee of the appellants' union voted to strike effective at noon on March 12, 1974. The appellee's personnel director testified that, at the time the strike was called, boiler repairmen were in the boiler room assembling the boiler and left after they were told by a union official that a strike was called. He said that work would have been available on March 12 at 11:30 p.m. had the strike not been called. The boiler was finally repaired by appellee's maintenance personnel and it was back in operation at 5:00 p.m. on March 14, 1974. The personnel director stated that those on the picket line could see that the boiler was in operation due to the "steam coming out of the roof." The president of the local union testified that he and all the appellants were members of the local union and were actively engaged in picketing the plant. The finding of fact critical to this appeal was that appellants' unemployment was "because of a labor dispute in which they are participating as active members of the union."

In *Harding Glass,* supra, the employees were in a layoff status and collecting benefits when the labor dispute commenced. Some employees were requested to return to work at various times during the labor dispute and refused to do so. The employees involved in the case returned to work after the dispute ended. The Board of Review held that the employees

who were in layoff status were not entitled to benefits from the date they were directed to report to work and failed to do so as they participated in the labor dispute by their refusal to report to work as directed. These employees were not notified that work was available or requested to return to work until after the labor dispute commenced. We concluded that "the appellees did not lose or leave their employment by reason of the labor dispute which arose on October 10, 1966; but that they remained on a lay-off status and did not participate in the labor dispute until they were notified to return to work and they failed to do so. For it was then, and only then, that they lost or left their employment *by reason of the labor dispute.*"

We distinguished the case from *Fort Smith Chair Co.* v. *Laney,* 238 Ark. 636, 383 S.W. 2d 666, but pointed out that we had there held that an employee who was notified to return to work and refused to do so because of a labor dispute thereby participated in and became a part of the dispute. In *Harding Glass,* the appellees were allowed to draw benefits for the period in question because they did not participate in the "labor dispute until they were notified to return to work following their layoff and they joined in the labor dispute by failing to return to work." Thus, in both the Chair Company case and the Harding Glass case, the employees' refusal to return to work, when notified work was available, constituted or was equivalent to joining in the labor dispute. These cases clearly stand for the principle that one drawing benefits in a layoff status is not entitled to continue to draw them after he joins in or participates in a labor dispute. We do not consider that the mere fact that the employees in *Harding Glass* were held to be entitled to benefits is controlling as a matter of law in this case. In *Harding Glass,* there was no evidence that the employees involved had ever done anything toward participation in the labor dispute prior to being notified to return to work. Here, the appellants were actively participating in and supporting the labor dispute by picketing the plant. This was very substantial evidence that appellants were participating in the labor dispute. In fact, the president of the union to which they belonged and in sympathy with which they were acting said that if he had been notified to return to work he would not have crossed the picket line to do so. There is no contrary evidence on the part of any of the appellants. The

Board, as a fact finder, could reasonably infer that one who actively participated, as here, in the labor dispute would not have returned to work until the dispute was resolved and that a notice to return to work would have been futile. Thus there was substantial evidence to support the finding of fact made in this case.

The purpose of the enactment of the Unemployment Act was aptly enunciated in *Harding Glass,* supra, when we said:

> The Employment Security Act was intended to withhold benefits from those who bring about their own unemployment by bringing about or participating in a labor dispute.

In 12 Ark. Law Rev. 123, it is said:

> Not all unemployment is compensable, and recovery is conditioned by certain legislative policies which generally restrict benefits to cases of involuntary unemployment . . . Policy reasons given for the labor dispute clause include: (1) that the benefits payable to strikers might exhaust the insurance fund; (2) that unemployment due to strikes is not involuntary; and (3) that the state should not assist either side in a labor dispute. (Case Note, James E. Youngdahl)

In the case at bar, as indicated, there is substantial evidence to support the Board's finding that the appellant employees were voluntarily unemployed due to a labor dispute and, therefore, are not entitled to unemployment compensation.

Affirmed.

The Chief Justice and Mr. Justice Jones dissent.

CARLETON HARRIS, Chief Justice, dissenting. This dissent is not based on any contention that, under the law, strikers are eligible for unemployment benefits. Rather, it is predicated on the belief that this court should not pervert or distort a legislative statute, which, in my view, is what is being done in this case. It is undisputed that appellants were

laid off from work *before* any strike was called; it is also undisputed that when laid off, they were told, as set out in the majority opinion, that a boiler had blown up and "that they would be notified to return to work as soon as it was repaired, but there would be no work until they were notified." Again — it is undisputed that these employees were never advised that the boiler had been repaired and that they could return to work. Now — the burden was on somebody to determine when work could be resumed. To me, this burden was on the employer, and particularly so, since appellants had been told that they would be notified and "*there would be no work until they were notified.*" [My emphasis].

In *Harding Glass Co.* v. *Crutcher,* 244 Ark. 618, 426 S.W. 2d 403, this court said:

> "The question then, boils down to whether the employees who were laid off for lack of work and who were drawing unemployment benefits, were still entitled to draw unemployment benefits until they were notified to return to work and refused to do so. In other words, does notice to the employer by the union president that employees do not intend to work without a contract, suspend the right to continued compensation payments to those employees who are on a lay-off status and already out of work when the notice is given and a labor dispute arises, or is it necessary that such employees be notified to return to work and refuse to do so before their unemployment benefits are suspended?

> "We are of the opinion that such employees should be notified to return to work *and refuse to do so* before the payment of their unemployment compensation benefits should be suspended." [My emphasis].

I do not think that the fact that appellants could see "steam coming out of the roof" constitutes notice that these employees could return to their jobs. If the Unemployment Compensation Act needs amending to cover all facts mentioned in the majority opinion, then that is a matter for the legislature, and not for this court.

I, therefore, respectfully dissent.

J. FRED JONES, Justice, dissenting. I am unable to see wherein the substituted opinion on rehearing adds any soundness to the reasoning employed by the majority in the original opinion. I still dissent.

The question in this case still remains whether the employees left their employment by reason of a labor dispute. I find no evidence at all that the appellants left their employment because of a labor dispute or that they were participating in, or were directly interested in, the labor dispute when they were required to leave their employment. The appellants were required to leave their employment until notified to return because a boiler blew up and there is not the slightest evidence in the record that the boiler blew up because of a labor dispute.

The reason for leaving the employment in the first place is the controlling factor as I see it and not what occurred after the employees left their employment and while they remained on a lay-off status. The appellants were on a lay-off status because of the disabled boiler and were told that they would be notified by their employer when to return to work. The mere fact that a strike was subsequently called and the appellants, or some of them, might have been on a picket line where they could have seen steam issuing from the boiler house and thereby should have known that the boiler was again in operation and work would be available if they cared to return to work, simply does not make sense to me.

Certainly there was a fact question as to whether the appellants subsequently participated in a labor dispute by appearing on a picket line, and as to whether they could have seen steam coming from the boiler house indicating that the boiler had been repaired and work was again available, but that is beside the issue in this case. Perhaps the law should be that rights to unemployment benefits should be denied an employee who has been laid off for other reasons if, and when, he subsequently participates in a labor dispute or strike while on a lay-off status, but I do not so interpret the law as it stood prior to the majority opinion in this case.

It is my opinion that this case falls squarely within the rule of *Harding Glass* v. *Crutcher*, 244 Ark. 618, 426 S.W. 2d

403. I see no difference in the employees' status when they are on a lay-off status and *collecting* benefits when the labor dispute arises as in *Harding Glass,* and when they are on a lay-off status and *should* be collecting benefits when the labor dispute commences as in the case at bar.

Certainly the employees in the case at bar should have been denied subsequent benefits if they had been notified to return to work and had failed to do so because of the labor dispute — that very thing probably would have occurred in this case, but the fact is, that it did not. Had the appellants been notified to return to work as the employer promised they would, and if they had then failed to return to work, it would have been then and only then that this court should agree they lost their employment by reason of a labor dispute.

I would still reverse.