## EMPLOYEES OF LION COAL CORPORATION AT WATTIS v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 6291.  Decided April 1, 1941.  (111 P. 2d 797.)

*Marl D. Gibson,* of Price, for plaintiff.

*Joseph Chez,* Atty. Gen., *S. D. Huffaker,* Asst. Atty. Gen., and *A. N. Ferro* and *F. F. Dremann,* both of Salt Lake City, Sp. Counsel, for defendants.

MOFFAT, Chief Justice.

This is an action to review a decision made by the Industrial Commission of Utah, herein referred to as the Commission.

The action involves a right of certain "Employees of the Lion Coal Corporation at Wattis, Utah," herein referred

to as the petitioners, to receive unemployment compensation benefits according to the Utah Unemployment Compensation Law for the following days: May 8th, 9th, 10th and 11th, 1939.

On the 18th day of April, 1939, the Lion Coal Corporation at Wattis, Utah, herein referred to as the company, posted the following notice:

"April 18, 1939

"Notice all employees
"Effective April 19th, the mine will be closed for 30 days. All employees will be notified when to return to work. Pay checks and lay off slips will be ready Thursday morning April 20th.
"W. J. Hillabrant."

On the 19th day of April, 1939, District No. 22, United Mine Workers of America, hereinafter referred to as the union, notifed the Utah Coal Operators that the interim agreement, entered into by the union and operators, pending determination of the contract difficulties between the Appalachian Association of Coal Operators and the United mine Workers of America, would be terminated at midnight May 4, 1939, and that there would be a stoppage of work. The strike went into effect on May 4, 1939, as stated.

On the 7th, 8th, 9th and 10th of May, 1939, the company posted and kept posted the usual "work sign" at the mine office at Wattis, Utah, the usual effect of which is to notify workers that operations will be resumed the following day. The sign was posted at an "inconspicuous place" but it was posted where such notices are usually posted, in the company office window. The superintendent did not follow his usual custom of notifying the petitioners by personal contact, telephone and radio. The superintendent testified this was his personal undertaking.

On the 11th day of May, 1939, the union officials notified the company that insofar as they were concerned the company could begin operations immediately. The company then took the "work sign" down, and did not resume operations until May 23, 1939.

· The Commission found that there existed a strike in the Utah bituminous coal industry during the period of time from midnight May 4, 1939, to midnight May 18, 1939, inclusive, but as to this company the strike terminated on May 11, 1939.

Sec. 5(d), chapter 1, Laws of Utah 1936, Special Session, of the Unemployment Compensation Law provides:

"An individual shall be ineligible for benefits:  *  *  *

"(d) For any week in which it is found by the commission that his total or partial unemployment is due to a stoppage of work which exists because of a strike involving his grade, class, or group of workers at the factory or establishment at which he is or was last employed."

In an action growing out of this same strike involving mines in this area, this court affirmed the Commission in holding that employees were not entitled to unemployment compensation benefits from May 4th to and including May 18th, because the stoppage of work was due to a strike even though the operator had ordered the stoppage of work prior to the time set for the beginning of the strike. *Employees of Utah Fuel Co. at Clear Creek* v. *Industrial Commission of Utah et al.,* 99 Utah 88, 104 P. 2d 197, 200. In the Utah Fuel case there was a definite relationship between the prior stoppage of work and the strike. However, in the instant case, it could not be found that the stoppage of work in April existed because of the strike weeks after the mine had been closed.

The company makes no claim that it was able and ready to provide employment for the petitioners on any days other than May 8th, 9th, 10th and 11th, 1939. The petitioners were given their respective lay off slips on the 20th of April because the company did not have sufficient orders to warrant continued operations. When circumstances changed in May, the company had sufficient business to warrant operations and manifested an intention to operate and offered employment by posting the "work

sign." Then the stoppage of work was no longer due to acts of the company but was due to the strike of the petitioners.

In the Utah Fuel case, supra, this court held that under the facts of that case it was not necessary to post a "work sign" to notify the employees of the availability of work, and speaking through Mr. Justice McDonough said:

"Indeed, it would be perhaps a display of bad faith and lead to trouble with the union were an employer to try to encourage men to come to work during a strike and while negotiations were proceeding between employer and employee representatives."

However, where the operator voluntarily causes work to cease some time prior to the calling of the general strike, there must be some evidence given and something shown by such operator to indicate that it desires work to begin again. What will be deemed sufficient notice to resume work will depend upon the circumstances in each case; and where, as in the instant case, notice was served on the company by the union that the interim agreement would be terminated as of midnight May 4th, the Commission might reasonably find that the posting of notice after May 4th in the usual place for the posting of notices to resume work was sufficient notice.

Counsel for the petitioners makes much of the fact that the company posted the notice that "Effective April 19th the mine will be closed for 30 days"; that the superintendent did not follow the usual custom in notifying the petitioners to come back to work personally; that company could not have had available orders for the reason that when it was notified by the union it could resume operations on the 11th of May the "work sign" was taken down; and that operations did not begin until May 23rd.

The company presented evidence that it notified the railroad that it would probably be 30 days before operations would be resumed; that the management in Ogden notified the superintendent at Wattis to start operations on the 8th of May; that the superintendent put out the "work sign"

on May 7th, and kept it out to and including May 10th; that he did not follow his usual custom of personal notification because he knew the men would not come back to work because of the strike; that the company had been notified by the union that the interim agreement had been terminated and that if "any favorable developments occur before midnight May 4th that would change this policy immediate notice will be sent to all interested parties" by the union; that there were orders available due to the fact other mines in the region would not be operating because of the strike; that as long as there was a dispute business was building large reserves but that when an agreement was reached these large reserves were on hand and there was no need for new orders and available orders were deferred; and, that the company was willing and desired the petitioners to work on May 8th, 9th, 10th and 11th, 1939.

The Commission found the petitioners were out of employment between May 5th and 7th and May 12th and 18th, inclusive, because the company did not have employment to offer; that between May 8th and May 11th, inclusive, the company had sufficient orders for coal to warrant operations.

There is a conflict in the evidence. There is substantial evidence to support the findings of the Commission.

The order of the Commission that the petitioners are not entitled to unemployment compensation is affirmed.

LARSON, McDONOUGH, and PRATT, JJ., concur.

WOLFE, Justice (concurring).

I concur. Where a strike status begins during a period of unemployment, any work resumption notice should be made in good faith and the Commission should closely examine the facts to see if it was so made. The fact that the company in this case did not follow its usual custom of notifying the men by telephone and radio, and posted the notice in inconspicuous places where, during a strike an employee's entry on the property would be most likely

watched with suspicion, if not prohibited, may be some evidence of lack of good faith. On the other hand, the company may have justifiably concluded that the usual manner of notifying the men of a willingness to resume work would have been futile since loyalty to union action until agreements were reached in the East, might be presumed.

It cannot be said that the Commission was wrong in not concluding under all the circumstances, that the notice was not posted in good faith, hence, I concur.