[No. 39026.    Department Two.    September 28, 1967.]

THE STATE OF WASHINGTON, *Appellant,* v. CONTINENTAL
BAKING CO., *Respondent.*[*]

*The Attorney General, Richard M. Montecucco* and *Robert N. Gates, Jr., Assistants,* for appellant.

*John J. Keough* (of *Colvin & Williams*), for respondent.

HUNTER, J.—This is an appeal from the dismissal of an action instituted by the state of Washington, plaintiff (ap-

*Reported in 431 P.2d 993.

pellant), to recapture from Continental Baking Company, defendant (respondent), an overpayment of unemployment compensation benefits paid to one of its employees, Marvin Johnson, during a period in which he was unemployed. By reason of an arbitrator's subsequent determination that Johnson was improperly discharged, he was reinstated and awarded full back pay from Continental, which amounted to $3,067.64, and included a $706 deduction for unemployment compensation benefits.

The state sought restitution of the benefits deducted, but was unsuccessful in its claim against Johnson because of his economic hardship, and thereafter instituted this action against Continental. The complaint alleged that Continental, by deducting the amount of benefits received by the employee from the back pay award, was unjustly enriched to that extent at state expense.

By the terms of the back pay order, Continental was required to make Johnson whole by paying him his full back wages less any wages, by way of mitigation, he did in fact earn or would have earned during the layoff by the exercise of ordinary diligence. The arbitrator's decision, which also affected two other employees, awarded them:

> such sum of money as shall equal the difference between any wages which they did in fact obtain, or which they might have obtained in the exercise of ordinary diligence while laid off, and the wages which they would have received if they had continued to work for the Employer. They shall also receive any of the fringe benefits provided by the contract.

Following this decision, negotiations between Continental and the employee's union representative were initiated in order to arrive at the amount of the award. In dispute were the wages, commissions and fringe benefits to which Johnson would have been entitled had his employment not been interrupted by the discharge. There was also some question about the amount of the deduction for wages the employee might have earned during the period of discharge by the exercise of reasonable diligence, in addition to those actually earned. An agreement was subsequently reached

pursuant to a formula for average weekly wages and the deductions were taken as shown by the following letter from Continental (exhibit B) admitted in evidence:

October 5, 1963

Mr. Ray Gabbard, Assistant Manager
Unemployment Insurance
State of Washington
Employment Security Department
1313 Tacoma Avenue South
Tacoma, Washington

Re:

Harold L. Cook      Joseph Wasalino      Marvin Johnson
SSA# 532 49 0839   SSA# 536 10 7803   SSA#567 05 0583

Dear Mr. Gabbard:
This is in reply to your letter of October 3 regarding the above individuals. We have not completed the forms you attached because it has not been possible for us to do so. The total amounts we paid out to these three men are not reducible to a weekly figure.

*Joseph Wasalino*: By the terms of the arbitration, we paid him for the period October 1, 1962, through May 23, 1963, at $144.74 per week. This amounted to $4,-863.27. In addition, we paid him $135.00 to reimburse him for Health and Welfare premiums he had paid out. Since, during this period of time, he had been employed elsewhere, we deducted his declared earnings of $3,615.38. We also deducted $84.00, which you stated he had drawn in Unemployment Benefits. (Please refer to your letter of May 31 to Mr. Wasalino.) We therefore paid him a total of $1,298.89.

*Marvin Johnson*. By the terms of the arbitration, we paid him for the period October 1, 1962, through May 23, 1963, at $155.10 per week. This amounted to $5,-211.36. In addition, we paid him $47.85 to reimburse him for Health and Welfare premiums he had paid out. We also deducted his earnings, $1,485.57, and his Unemployment Benefits, $706.00. We therefore paid him a total of $307.64 [sic] 3067.64.

*Harold L. Cook*: By the terms of the arbitration, we paid him for the period October 22, 1962, through May 23, 1963. This amounted to $4,469.39. After deducting $1,134.00, which he drew in Unemployment Benefits, we paid him $3,335.39.

I hope the above information will be satisfactory. In conclusion I would like to reiterate my Company's position as I expressed it to you by telephone the other day. We feel that any monies drawn by these three men for Unemployment Benefits is a matter between them and your office. If you feel you have a claim in this matter, I am sure you will agree that the Continental Baking Company cannot and does not enter into the picture since these men, and not my Company, received the money.

If I can be of any further assistance to you, please do not hesitate to let me know.

Very truly yours,
George Picciotto,
Office Manager

GJP:pf                                    Seattle Bakery

By its assignments of error, the state contends that the deduction of unemployment compensation benefits, as shown in the foregoing letter, was improper, since the parties could not by private agreement bargain with public funds; and that by their settlement they have put the state in the anomalous position of having partially subsidized a back pay award.

Continental argues, however, that the state is precluded from this action since the amount paid was the result of an accord and satisfaction of the arbitrator's decision pursuant to a union representative's offer to compromise; that Continental agreed to a formula for determining Johnson's average weekly wage, agreed to pay him for certain premiums he had paid, and did not insist upon credit for the wages Johnson might also have earned during the period of his discharge by the exercise of reasonable diligence, all in exchange for certain deductions being taken from the employee's wages.

We need not collaterally consider the validity of the claimed accord and satisfaction; since irrespective of this attempt by the parties to arrive at a settlement, they could not by private agreement, either directly or indirectly, dispose of unemployment benefits to which neither was entitled, and thereby deprive the state, the rightful holder of

these funds, of its claim to restitution. The applicable principle of law was aptly stated in *State v. Rucker*, 211 Md. 153, 126 A.2d 846 (1956), the only authority found where this question has been considered by the courts. On facts strikingly similar to those in the instant case, the Maryland court upheld the right of the state to restitution, stating:

> The great weight of authority seems to favor the position that a payment made by a state or political subdivision under a mistake of law is recoverable, distinguishing that situation from the normal rule where payment is made by mistake of law in situations between private parties.

See also Restatement, Restitution § 46 (a).

This principle is applicable to the instant case. As a result of the arbitrator's decision, Johnson had not been in effect an "unemployed" worker during the period of his discharge and was not entitled to retain the compensation benefits received by him under a mistake of law. Consequently, neither he nor his union could validly agree with Continental to deduct the amount of compensation from the back pay award. The state, therefore, could not be bound by any private settlement reached and is entitled to restitution of the amount of unemployment benefits used, and by which the parties were unjustly enriched in settling the back pay award.

Continental contends, however, that it should not be held liable in equity for the amount overpaid and that the state is limited to its statutory action against the claimant, Johnson, for reimbursement. We disagree.

■ Despite the state's claim against the employee, the deduction of unemployment compensation benefits from the back pay award resulted in a direct saving to Continental, at public expense, of its obligation to make its employee whole under the arbitrator's decision. Considering this result, the state properly looked to Continental as the party unjustly enriched.

Continental contends further that the state in failing to join it in its action against the employee is barred from this

present proceeding by reason of the judgment in the first action.

■ This argument is without merit. The action for overpayment against Johnson, was under a special statutory proceeding, available only against Johnson as the claimant of benefits, RCW 50.20.190; and the state, failing to recapture the benefits paid by this method, was not precluded from pursuing its remedies against Continental under common law principles. As stated in *State v. Rucker, supra:*

It was said by Lord Mansfield in *Moses v. Macferlan*, 2 Burrows 1005: "If the defendant be under an obligation, from the ties of natural justice, to refund; the law implies a debt, and gives this action, founded in the equity of the plaintiff's case, as it were upon a contract, ('quasi ex contractu',) * * *. * * * the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money."

Continental finally contends that the state's action is barred by the 2-year statute of limitations provided in RCW 50.20.190, *supra,* relating to overpayments.

■ This contention similarly lacks merit. The statute of limitations provided in RCW 50.20.190 has application only to the special statutory proceedings against the claimant and in no way bars an action against third parties after the 2-year period of limitations has expired.

The judgment of the trial court is reversed and the case remanded with direction that judgment be entered in favor of the state for the sum of $706, together with interest thereon at 6 per cent, as prayed for from the date of the settlement.

FINLEY, C. J., ROSELLINI and NEILL, JJ., and LANGENBACH, J. Pro Tem., concur.