**Fred A. BALE**

v.

**Charles RYDER.**

Supreme Judicial Court of Maine.

May 10, 1972.

See also Me., 286 A.2d 344.

Gagan, Trynor, Berry & Cummings by Henry N. Berry, III, Portland, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by William B. Troubh, Robert L. Hazard, Jr., Portland, for defendant.

Before DUFRESNE, C. J., and WEBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

Both parties appeal from a jury verdict in favor of the plaintiff. The defendant's appeal is based fundamentally upon an error committed by the Justice below when instructing the jury, objection to this instruction having been seasonably noted. We sustain the defendant's appeal and order a new trial, thus rendering moot the issues raised by the plaintiff's appeal.

The complaint alleged both a false arrest of, and an assault and battery on, the plaintiff, the defendant being a Portland police officer.

Admittedly, the plaintiff was arrested by the defendant without a warrant for a violation of 17 M.R.S.A. § 3953, which provides:

"Any person who shall by any offensive or disorderly conduct, act or language annoy or interfere with any person in any place or with the passengers of any public conveyance, although such conduct, act or language may not amount to an assault or battery, is guilty of a breach of the peace and shall be punished by a fine of not more than $100 or by imprisonment for not more than 6 months, or by both."

The language which prompted the arrest was the direction of an obscenity at the defendant by the plaintiff (which he denied), while they were engaged in a conversation in the yard of an ice cream stand. Although other people were in the vicinity, there was no evidence that this remark was audible to them.

The allegation of false arrest appears to be founded on one of two theories:

1) The plaintiff did not direct an obscene remark at the defendant.

2) Assuming he did, it is not a violation of 17 M.R.S.A. § 3953 to annoy or interfere with a police officer by the use of offensive language.

There were three possible theories upon which the jury could have found liability based on assault and battery:

1) The execution of a false arrest.

2) The use of excessive force in taking the plaintiff into custody at the scene of the arrest.

3) The use of excessive force twice at the police garage while removing the plaintiff from the police car and placing him in a retention cell.

There was evidence by the plaintiff, denied by the defendant, of physical abuse both at the locus of the arrest and at the jail subsequent to the arrest.

In the instructions to the jury, to which objection was noted, the Justice below made it plain that the statutory words "annoy or interfere with any person" excluded police officers. He stated:

"If . . . you believe . . . that this profane language was said in the company or in the presence of persons who might reasonably be expected to be annoyed by it,—*and this does not include the defendant*; in other words, it is not sufficient that the profane language annoy him . . . ." (Emphasis supplied.)

Although the jury was instructed that the use of excessive force to execute a legal arrest could constitute an assault and battery, they were also told:

"[T]he mere placing of a person under arrest falsely constitutes an assault, or assault and battery.

\*     \*     \*     \*     \*     \*

. . . the law says the false arrest constitutes an assault and battery. . . . I think if you find that there was a false arrest you can then proceed to the question of damage, because the question of damage or injury then would be the same, notwithstanding whether he was in fact assaulted, because the assault would necessarily become a part of the false arrest."

In submitting the case to the jury the Justice required it to respond to the following interrogatories:

1. Is the Defendant liable to the Plaintiff for false arrest?

2. Is the Defendant liable to the Plaintiff for Assault and Battery?

3. What amount of compensatory damage has the Plaintiff sustained?

The jury answered the first interrogatory in the affirmative, the second in the negative, and assessed damage at $1,500.00.

Basic to our result is the accuracy of the instruction that the statutory expression "any person," excluded policemen. We agree with the defendant that the instruction was erroneous.

The phrase "annoy or interfere with any person" is clear and unequivocal. The Legislature could easily have modified the expression by adding "except police officers," or similar language, when the statute was originally enacted in 1957. P.L.1957, Chap. 133. The general rule unless such construction is inconsistent with the plain meaning of the statute, is that "[w]ords and phrases shall be construed according to the common meaning of the language. . . ." 1 M.R.S.A. § 72(3). "Person" is defined by Webster as a "human being." The nonspecific adjective "any" is said to mean "indiscriminately of whatever kind," or, "no matter what one." Common meaning of "any person," therefore, is a "human being, no matter what one." There is no inconsistency in § 3953 which requires a different definition.

We can conceive of no reason why a police officer, or other public official responsible for maintaining law and order, should have to be the object of obscenities and vulgarities of the type which, if addressed to a layman, would have a direct tendency to incite him to acts of violence. Such is the type of language proscribed by 3953. State v. Chaplinsky, (1941) 91 N.H. 310, 18 A.2d 754.[1]

The conclusion here reached is supported by authority elsewhere.

"While it is obvious that not every abusive epithet directed toward police officers would be sufficiently disturbing or provocative to justify arrest for disorderly conduct, there is no sound reason why officers must be subjected to indignities such as present here, indignities that go far beyond what any other citizen might reasonably be expected to endure." City of Saint Paul v. Morris, (Minn.1960) 258 Minn. 467, 104 N.W.2d 902, 903.

The erroneous instruction excluding police officers from the application of § 3953 renders the answers given by the jury to the interrogatories completely irreconcilable. For example, the response of the jury to the first interrogatory could have been the result of an acceptance of the defendant's version of the facts, namely, that he had arrested the plaintiff for directing offensive language at him but at no time did he use any unnecessary force, the jury believing from the instructions given it that the plaintiff had not violated the statute. It is also conceivable that the jury may have believed the plaintiff's denial of the use of any obscene language and, therefore, reached the conclusion that the defendant made a false arrest, resulting in an assault and battery, but at the same time not believing any excessive force was used either at the locus of the arrest or at the police garage.

A third plausible possibility is that, although they felt an assault and battery was committed at the police garage, they did not reflect this finding in their answer to the second interrogatory in view of the instruction, "if you find that there was a false arrest you can then proceed to the question of damage." It is clear that an officer making a lawful arrest may not use force or violence disproportionate to the amount necessary to enable him to perform his duty. Murdock v. Ripley, (1853) 35 Me. 472; 5 Am.Jur.2d Arrest §§ 80–81, Restatement (Second) of Torts, § 132. The jury had facts from which, but for the instruction merging assault and battery with false arrest for the purpose of assessing damage, it might have responded affirmatively to the second interrogatory.

In short, the erroneous interpretation of the statute excluding police officers as "persons" permeated the verdict to such an extent that, in fairness to both litigants, a new trial on all issues is mandated.

The entry is:

Defendant's appeal sustained. New trial ordered.

All Justices concurring.

---

[1]. Affirmed in Chaplinsky v. New Hampshire, (1942) 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031; *see also* Gooding v. Wilson, (1972) 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408.