Robert A. GALVIN, W. J. Jones, D. F. Huey, Jr., K. R. Carolus, D. J. Hutzel, D. D. Dutcher, D. L. Levendusky, D. W. Debell, Jr., T. L. Clevenger, S. P. Rowe, E. E. Clifford, A. D. Low, A. L. Hanson, F. J. Dougherty, R. A. Rasmussen, N. J. Kantaris, Jr., A. J. Boelman, R. L. Waters, B. E. Baker, J. A. Dodge, R. L. Trettin, A. D. Miles, D. E. Lichman, R. S. King, P. Flores, D. G. Bieber, C. Kuykendall, R. L. Staley, C. E. Patterson, W. J. Kingston, C. R. Andrews, E. E. Clifford, R. J. Swenson, and D. R. Merritt, Appellees,

v.

IOWA BEEF PROCESSORS, INC. and Iowa Employment Security Commission, Appellants.

No. 59434.

Supreme Court of Iowa.

Jan. 18, 1978.

Jacobs, Gaul, Nymann & Green, Sioux City, for appellant Iowa Beef Processors.

Walter F. Maley and Blair H. Dewey, Des Moines, for appellant commission.

Smith & Smith, Sioux City, for appellees.

LeGRAND, Justice.

This appeal involves the statutory labor dispute disqualification for unemployment benefits and the recoverability of benefits allegedly erroneously paid.

Due to price conditions in the market for beef, Iowa Beef Processors shut down operation of its plant at Mason City, Iowa, on July 23, 1973. The notices posted in the plant included this last sentence: "Notification will be given by local radio and television as to when we will resume operation." Following the closure, employees received unemployment benefits from Iowa Employment Security Commission.

Later in the summer beef prices improved, and on September 6, 1973, Iowa Beef decided to resume operations on Monday, September 10, 1973. Accordingly, employees were notified by press, radio, and telephone to return at that time. Maintenance men came back in advance to ready the plant.

At 7:30 p. m. on September 7, 1973, the local manager received a telegram from the employees' union that a strike would begin at midnight, September 9, 1973. Claimant-employees participated in this strike and picketed. The strike continued until January 22, 1974. During at least some of the strike period, claimants received both unemployment benefits from Iowa Employment Security Commission and strike benefits from their union.

Under commission rules, claims for unemployment benefits must be filed currently and may not be back dated. *Ritchey v. Iowa Employment Security Comm'n*, 216 N.W.2d 580 (Iowa 1974). Accordingly, commission representatives told claimants to continue to file claims even though they were on strike. Had claimants not done so, they would have forfeited their right to collect for the unfiled weeks if they were ultimately held to be otherwise eligible.

Claimants therefore continued to file claims for unemployment benefits during the strike. They disclosed that they were receiving union strike benefits and did not misrepresent the facts. Iowa Beef resisted the claims on the ground the work stoppage was due to a labor dispute. This temporarily stopped payment of benefits until the commission considered the claims on the file of its claim department. On November 15, 1973, the commission rendered an "Initial Determination," subject to appeal, that claimants were entitled to unemployment benefits. A notice from the commission dated November 16, 1973, stated that Iowa Beef had seven days in which to appeal to the commission after the notice was mailed. Iowa Beef's time to appeal expired on November 23, 1973. § 96.6(2). Soon after that date, the commission released the unemployment benefits and began to pay claimants.

Actually, however, Iowa Beef did not receive the mailed notice until December 4, 1973, eighteen days after it was mailed. It forthwith appealed, and the timeliness of the appeal is not in issue. *See Smith v. Iowa Employment Security Comm'n*, 212 N.W.2d 471, 472 (Iowa 1973). *See also* § 96.7(3)(a)(6).

On the appeal to the commission, the claims were formally presented and contested. The commission ruled by a two-to-one vote that claimants were not entitled to unemployment benefits during the period in question because they were absent from work as a result of the strike.

From that ruling claimants appealed to district court, which adopted the position of the dissenting commissioner and reversed. The court also held that the commission was not entitled to recover the unemployment benefits paid to claimants during the strike. Iowa Beef and the commission then appealed to this court.

The appeal involves two main issues: (1) Did the work stoppage during the period of the strike result from the strike? (2) Is the commission entitled to recover the unemployment benefits paid during the strike?

▪ I. The first issue involves two subsections of our employment security statute. (All references are to the Code of 1973.) Subsection 96.5(3) disqualifies an individual for unemployment benefits if he fails to accept suitable work when offered him, but paragraph *b* of the subsection provides that an individual shall not be denied benefits for not accepting "new work" if "the position offered is vacant due directly to a strike, lockout, or other labor dispute * * * ."

Our statute (§ 96.5(4)) provides that an individual is disqualified for benefits during "any week with respect to which the commission finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed [with two exceptions not involved here]."

The instant claims involve but one factual difference from most strike related work stoppages. Here claimants did not walk out of the Iowa Beef plant on strike. They were laid off because of unfavorable beef market conditions, were called to return, and then went on strike. Is this a "stoppage of work which exists because of a labor dispute" under § 96.5(4)?

The reported decisions hold that it is. The courts look at the period for which benefits are claimed and determine whether work was stopped because of the prior layoff or the later strike. *Clapp v. Appeal Bd. of the Mich. Unemployment Compensation Comm'n,* 325 Mich. 212, 38 N.W.2d 325; *Abbott v. Appeal Bd. of Mich. Unemployment Compensation Comm'n,* 323 Mich. 32, 34 N.W.2d 542; *Tripp v. Alley Const. Co., Inc.,* 297 Minn. 232, 237, 210 N.W.2d 668, 671; *Employees of Lion Coal Corp. v. Industrial Comm'n of Utah,* 100 Utah 207, 111 P.2d 797. *See also Matson Terminals, Inc. v. California Employment Comm'n,* 24 Cal.2d 695, 705, 151 P.2d 202, 208; *Ft. Smith Chair Co. v. Laney,* 238 Ark. 636, 383 S.W.2d 666; *Merryman v. Administrator, Unemployment Compensation Act,* 23 Conn. Sup. 233, 181 A.2d 260; *Muncie Foundry Div. of Borg-Warner Corp. v. Review Bd. of Employment Security Div.,* 114 Ind.App. 475, 51 N.E.2d 891; *Ablondi v. Board of Review, Div. of Employment Security,* 8 N.J.Super. 71, 73 A.2d 262; 76 Am.Jur.2d Unemployment Compensation § 79 at 988; Annot. 28 A.L.R.2d 287, 307–312; Annot. 63 A.L.R.3d 88, 165–169; Annot. 61 A.L.R.3d 693.

After examining the evidence, the statute, and the decisions, we hold the commission applied the correct rule of law and its decision is supported by substantial evidence that during the strike period claimants did not work because of the strike and that claimants were disqualified during the strike. The district court erred in overturning the commission's decision.

■ II. The second issue involves the commission's right to recover payments made to claimants under the initial determination of November 15, 1973. The commission claims it is entitled to do so under § 96.16(4) because the payments were erroneously made. This depends on the statutory construction of that section in relation to the entire chapter dealing with unemployment benefits. This in turn depends upon the legislative intent to demand reimbursement for payments made on grounds later determined to be unsound.

It is clear from § 96.6(2) that recoupment of improperly paid benefits is not mandated in *all* cases. That section provides for judicial review but prohibits charging an employer's account with benefits already paid if the award is reversed. Implicit in this is the conclusion the benefits wrongfully paid are not recoverable.

However, the commission presently relies on 96.16(4) as a basis for compelling repayment of the amounts claimants received before the commission reversed its Initial Determination. That section provides:

"Any person who, by reason of any error, or by reason of the nondisclosure or misrepresentation by him or by another, of a material fact (irrespective of whether such nondisclosure or misrepresentation was known or fraudulent) has received any sum as benefits under this chapter while any conditions for the receipt of benefits imposed by this chapter were not fulfilled in his case, or while he was disqualified from receiving benefits, shall, in the discretion of the commission, either be liable to have such sum deducted from any future benefits payable to him under this chapter or shall be liable to repay to the commission for the unemployment compensation fund, a sum equal to the amount so received by him, and such sum shall be collectible in the manner provided in § 96.14, subsection 3, for the collection of past-due contributions."

We do not construe that section to compel repayment of the benefits claimants had already received.

In the first place, except for our conclusion defendants should be allowed a appeal despite their failure to comply with § 96.-6(2), the payments to claimants would have become final. The present situation, then, arises only because of our decision in *Smith v. Iowa Employment Security Commission*, 212 N.W.2d at 472. We should not permit a condition which we, not the legislature, created by *Smith* to work a hardship on individual claimants. The late appeal permits the commission, upon proper showing, to terminate payments for the future. It should not be used to demand recovery of payments already made except as later explained.

The commission places all its faith in the words "any error" as used in the statute. We believe those words must be related to the general purpose of the chapter on unemployment benefits. The term "any error" should logically be limited to conduct attributable to the claimant. The section deals with a claimant's non-disclosure or misrepresentation. This view is supported by the fact the section appears under the general heading of "Offenses."

Claimants made full disclosure of the true facts—the strike and the fact they were receiving union benefits. There was no evasion or misrepresentation. There was no "error" in their presentation of their case to the commission. The only error was in the failure of the postal authorities to deliver the mail expeditiously, a matter to which we have referred several times. *See Smith v. Iowa Employment Security Commission*, 212 N.W.2d at 473; *Eves v. Iowa Employment Security Commission*, 211 N.W.2d 324, 326 (Iowa 1973).

We refuse to hold the legislature intended one who had followed prescribed procedures, who had been awarded benefits under the statute, and who himself was guilty of no wrong or error must pay back amounts he had received under the commission's order.

This is not as unfair as the commission appears to argue. The purpose of the Iowa Employment Security Law is to minimize the crushing burden of unemployment. *Smith v. Iowa Employment Security Commission*, 212 N.W.2d at 472–473; *Malleable Iron Co. v. Iowa Employment Security Commission*, 195 N.W.2d 714, 717 (Iowa 1972). To force unemployed workers to either await prolonged litigation for a final adjudication or to pay back at some remote later date benefits already received and used for family support would defeat the overriding purpose of the act. In many instances it would, indeed, compound, rather than cure, the problem.

We believe the legislature had that very notion in mind when it provided in § 96.6(2) that payments made could not be charged against an employer's account in case of a later reversal. In such cases the system, not the individual, should bear the burden.

We therefore reverse the trial court decree in its conclusion claimants were entitled to receive benefits while on strike. We affirm, although for somewhat different reasons, the portion of the decree holding the commission is not entitled to recover the amounts previously paid to claimants under the commission's order.

AFFIRMED IN PART AND REVERSED IN PART.

All Justices concur, except UHLENHOPP and REYNOLDSON, JJ., who dissent.

RAWLINGS, J., takes no part.

UHLENHOPP, Justice (dissenting from division II).

I would like to achieve the result which the court majority reaches in division II but I think the language and purpose of § 96.-16(4) do not permit it. The majority says the error here is not the kind which comes within § 96.16(4), but that section does not differentiate between kinds of errors; it authorizes recovery for "any" error, and any means every or all. Moreover, individuals on strike are not entitled to unemployment benefits but the commission errone-

ously paid benefits anyway, and the very purpose of § 96.16(4) is to protect the unemployment benefits fund from erroneous payments.

I. The commission made two errors here leading to its payment of benefits. The first was its erroneous initial determination of eligibility, which it corrected upon subsequent full appeal. That error was compounded by a second error in thinking that Iowa Beef was not going to appeal from the initial determination when no appeal was taken by November 23, 1973—whereas Iowa Beef had not yet then received the initial determination through the mail. With a complicated statute such as chapter 96, which makes entitlement or disentitlement hinge on myriad factual and legal situations, all sorts of errors in making payments are bound to occur—errors on facts, on procedure, or on interpretation of the chapter.

Early in the life of chapter 96, the legislature evidently recognized the need, by statutory authorization, for recovery by the commission of benefits paid on account of any error. The question is whether we are going to give full effect to that statutory authorization according to its language and intent. The unemployment benefits chapter first appeared in the Code of 1939. Subsection 1551.22(D) of the chapter provided in pertinent part:

> Any person who, by reason of the nondisclosure or misrepresentation by him or by another, of a material fact (irrespective of whether such nondisclosure or misrepresentation was known or fraudulent) has received any sum as benefits under this chapter while any conditions for the receipt of benefits imposed by this chapter were not fulfilled, or while he was disqualified for receiving benefits, shall, in the discretion of the commission, either be liable to have such sum deducted from any future benefits payable to him under this chapter or shall be liable to repay to the commission for the unemployment compensation fund, a sum equal to the amount so received by him, and such sum shall be collectible in the man-

ner provided in section 1551.20 subsection "B" for the collection of past-due contributions.

In 1941 the legislature amended the subsection by adding to the first part the following words which I have italicized:

> Any person who, *by reason of any error, or* by reason of the nondisclosure or misrepresentation . . . .. 49 G.A. ch. 104, § 1.

The commission is correct that the present case comes within the language of § 96.16(4). Claimants received unemployment benefits. They received the benefits while they were ineligible. They received the benefits due to errors—the commission's error in its initial determination of eligibility and its error in thinking Iowa Beef was not going to appeal. The commission had blocked the funds but released them when the date it thought was the last for appeal had passed. We give "any" in the section its ordinary broad signification. § 4.1(2). "Any" means "one or some indiscriminately of whatever kind." Webster's Third New International Dictionary (1960). See also *State v. Steenhoek,* 182 N.W.2d 377, 379 (Iowa) ("any" is "synonymous with 'every' and 'all' "); *Herman v. Muhs,* 256 Iowa 38, 126 N.W.2d 400; *Iowa-Illinois Gas & Electric Co. v. City of Bettendorf,* 241 Iowa 358, 41 N.W.2d 1; *Gatewood v. Russell,* 29 Colo.App. 11, 478 P.2d 679; *Williams v. Administrator, Unemployment Compensation Act,* 30 Conn.Sup. 123, 303 A.2d 749; *State v. Rucker,* 211 Md. 153, 126 A.2d 846; *State v. Continental Baking Co.,* 72 Wash.2d 138, 431 P.2d 993. The court said this regarding "any" in *Motor Cargo, Inc. v. Board of Twp. Trustees of Richfield Twp.,* 52 Ohio Op. 257, 259, 117 N.E.2d 224, 227 (Com.Pl.), "In construing statutes the word 'any' is equivalent and has the force of 'every' or 'all'." Also, "The word 'any' excludes selection or distinction." The court stated in the case of *In re Belefski's Estate,* 413 Pa. 365, 375, 196 A.2d 850, 855, "The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive." And in *Hime v. City of Galveston,* 268 S.W.2d 543, 545 (Tex.Civ.

App.), "Further, the word 'any' has been construed to mean: 'each' or 'every' or 'all'. (Black's Law Dictionary, 3rd Ed., p. 119); and particularly in construing statutes, the word 'any' is equivalent to and has the force of 'every' and 'all'." Other definitions are " 'indiscriminately of whatever kind,' or 'no matter what one' ", *Bale v. Ryder,* 290 A.2d 359, 360 (Me.); "all-comprehensive and the equivalent of the words 'every' . . . and 'all' ", *Hamilton Fire Ins. Co. v. Cervantes,* 278 S.W.2d 20, 24 (Mo.App.); "defined judicially to mean 'all' or 'every' and the use of the word imports no limitation", *Shilbury v. Board of Supervisors of County of Sullivan,* 54 Misc.2d 979, 982, 284 N.Y.S.2d 124, 129. Manifestly the errors here come within the words "any error."

II. Since § 96.16(4) covers the present situation, by virtue of that section the commission has an "interest" in recovering the benefits erroneously paid for the unemployment compensation fund.

III. Claimants contend, however, that although the language of § 96.16(4) applies, the commission is estopped to recover the benefits because its representatives notified claimants to file claims. But in so doing, the representatives did only what they had a right to do—notified claimants to file so that the weeks in question would not be lost in case claimants ultimately prevailed. When claims are ultimately found otherwise valid, unemployment compensation claimants do not take kindly to denial of past weeks' benefits upon application of the rule that claims cannot be back dated. See *Ritchey v. Iowa Employment Security Comm'n,* 216 N.W.2d 580 (Iowa).

Claimants also contend that repayment of the benefits will work hardship on them, and the district court mentioned this factor in its findings. I realize that the union strike benefits probably are not large. Nonetheless, probably most unemployment-benefit claimants are in straitened circumstances; they are out of work. Requiring repayment works financial hardship on them whatever the cause of the error for the commission's payment of the benefits. But the legislature must have been cognizant of this when it amended § 96.16(4) to permit recovery for "any" error. If we refuse to let the commission enforce § 96.-16(4) here, we invade the policy province of the legislature. This we should not do.

Unemployment benefits were erroneously paid to persons who were not entitled to them. Section 96.16(4) authorizes recovery for "any" error, and the purpose of the section is to protect the fund against just such payments. I would reverse on this branch of the case also.

REYNOLDSON, J., joins in this dissent.