Robert K. MESSERSMITH, Plaintiff,

v.

BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH, Department of Employment Security, Defendants.

No. 20643.

Supreme Court of Utah.

June 27, 1986.

Ralph C. Petty, Salt Lake City, for plaintiff.

K. Allan Zabel, Salt Lake City, for defendants.

HALL, Chief Justice:

Plaintiff Robert K. Messersmith appeals a decision of the Industrial Commission, Department of Employment Security (Department), requiring him to reimburse unemployment benefits paid to him during a period of unemployment.

Plaintiff was discharged from his employment at the Tooele Army Depot on October 7, 1983. On October 11, petitioner applied for unemployment benefits. Plaintiff advised the Department that he had filed a grievance with the United States Merit Systems Protection Board asking for reinstatement to his employment at Tooele Army Depot. The Department reviewed the circumstances of the discharge and concluded that plaintiff had not been discharged for reasons that are disqualifying under the provisions of the Employment Security Act. U.C.A., 1953, §§ 35-4-1 to -26 (Repl.Vol. 4B, 1974 ed., & Supp.1985). Benefits were allowed effective October 9, 1983. Plaintiff was not asked to sign an "Assignment" or "Notice of Assignment" at the time he filed his initial claim for benefits, nor was he told that he would be liable for reimbursement of benefits if his grievance was successful.

Plaintiff received weekly benefits from October 9, 1983, to April 21, 1984 (a total of $4,316), and one week of extended benefits ($166) for the week of April 28. Plaintiff then stopped filing weekly claims. The Merit Systems Protection Board issued a final decision on September 11, 1984, reinstating plaintiff to his former position and ordering that he be paid back pay and benefits.

On November 19, 1984, plaintiff was asked by the Department to sign a "Wage Assignment and Notice of Assignment," which would authorize plaintiff's employer to withhold an amount equal to the unemployment benefits paid to plaintiff from the back-pay award and reimburse it directly to the Department. Plaintiff declined to sign those papers. The Department ordered a hearing to determine plaintiff's liability.

The hearing on the reimbursement was held on January 3, 1985. At that time, the back pay itself had not yet been received by plaintiff. However, the back-pay award had been ordered to be an amount equal to plaintiffs' regular rate of pay from discharge to reinstatement, plus raises and overtime for his grade and class.

At the hearing, the administrative law judge determined that the Department's delay in requesting plaintiff to sign the assignment forms had no negative impact on plaintiff. The administrative law judge then determined that because plaintiff refused to complete the assignment forms when he finally was requested to do so, he was "at fault" and liable to make cash repayment of the benefits awarded. The Board of Review affirmed the administrative law judge's decision.

Plaintiff appeals, contending that the Industrial Commission (Commission) erred in determining that plaintiff was "at fault" and thus liable for cash repayment of the unemployment benefits paid to him.

U.C.A., 1953, § 35-4-6 (Repl.Vol. 4B, 1974 ed., Supp.1985) states in pertinent part:

Repayment of Benefits Fraudulently Received.

(d) Any person who, by reason of his fraud, has received any sum as benefits under this act to which he was not entitled shall be liable to repay such sum to the commission for the fund. If any person, by reason of his own fault, has received any sum as benefits under this act to which under a redetermination or decision pursuant to this section, he has been found not entitled, he shall be liable to repay such sum, and/or shall, in the discretion of the commission, be liable to have such sum deducted from any future benefits payable to him. In any case in which under this subsection a claimant is liable to repay to the commission any sum for the fund, such sum shall be collectible in the same manner as provided for contributions due under this act.

Overpayment of Benefits without Fault of Recipient.

(e) If any person has received any sum as benefits under this act to which under a redetermination or decision he was not entitled, and it has been found that he was without fault in the matter, he is not liable to repay such sum but shall be liable to have such sum deducted from any future benefits payable to him with respect to the benefit year current at the time of such receipt.

Rule A71–07–1:6(IV)C.1 of the rules and regulations adopted by the Department of Employment Security [1] defines "fault" as follows:

1. Elements of Fault

Fault is established if all three of the following elements are present. If one or more element[s] cannot be established, the overpayment does not fall under the provisions of this section of the Act.

   a. Materiality

   Benefits were paid to which the claimant was not entitled.

   b. Control

   Benefits were paid based on incorrect information or an absence of information which the claimant reasonably could have provided.

   c. Knowledge

   The claimant had sufficient notice that the information might be reportable.

Rule A71–07–1:6(IV)C.3 is also applicable to the case at issue here.

3. Receipt of Settlement or Backpay

   a. A claimant is "at fault" for an overpayment created if he fails to advise the Department that grievance procedures are being pursued which may result in payment of wages for weeks he claims benefits.

   b. When the claimant does advise the Department prior to receiving a settlement that he has filed a grievance with his employer, he shall not be "at fault" if an overpayment is created due to payment of wages attributable to weeks for which he received benefits. The claim-

ant will be required to assign that portion of the settlement which is equivalent to the amount of benefits received, to be directly repaid to the Department by the employer. If the grievance is resolved in favor of the claimant and the employer was properly notified of the wage assignment, the employer is liable to immediately reimburse the unemployment insurance fund upon settlement of the grievance.

Under Rules C.1 and C.3a, plaintiff was clearly not "at fault." At the time plaintiff applied for benefits, he was entitled to the benefits he received, and the Department so admits. The Department determined that plaintiff was unemployed and that he had not been discharged for reasons that are disqualifying under the provisions of the Employment Security Act. The Department thus allowed benefits.

Furthermore, plaintiff provided all information requested by the Department and all information necessary for benefits. In particular, plaintiff informed the Department that he had filed a grievance asking for reinstatement and back pay. Thus, there was no misrepresentation by plaintiff or holding back of information.

Defendant, however, contends that under Rule C.3b the administrative law judge was justified in finding plaintiff "at fault" for failing to sign an assignment authorizing plaintiff's employer to withhold an amount equal to the unemployment benefits paid to plaintiff from the back pay award. This argument has no merit.

Rule C.3b specifically states that if a claimant advises the Department that he has filed a grievance which may result in back pay, he is not "at fault" if back pay is later awarded. Thus, under the Department's own rules, plaintiff is not "at fault."

Defendant, however, contends that the remainder of Rule C.3b allows the Commission to find a claimant "at fault" if he fails

---

**1.** In an effort to comply with the Utah Administrative Rulemaking Act, U.C.A., 1953, §§ 63–46a–1 to –15 (2d Repl.Vol., 1977 ed., 1985 Supp.), the Department reissued its rules effective January 15, 1986. The rules here quoted are taken from the current version of the rules, although they existed in a nearly identical form prior to the reissuance.

to sign a wage assignment form. The rule does not authorize such a finding, and this Court will not read such an interpretation into the rule.

Furthermore, review of the statutory provisions the above rules were promulgated to interpret indicates a clear legislative directive that a claimant is not required to repay overpayments if he is not "at fault." Under the Commission's own rules, plaintiff is not at fault and thus is not liable for cash repayment.

It is undeniable that the situation presented here is a difficult one. The Unemployment Compensation Act is a remedial statute designed to afford protection to those who are unemployed through no fault of their own.[2] The Department itself determined that plaintiff was unemployed for reasons that were not disqualifying. Looking at plaintiff's position from a practical standpoint, plaintiff was just as badly off insofar as day-to-day subsistence was concerned as if he had been laid off for lack of work. It is true that plaintiff had filed a grievance against his employer asking for reinstatement and back pay upon which he was ultimately successful. However, the mere possibility of plaintiff's reinstatement to his job and receipt of back pay in the future did not prevent plaintiff from being unemployed at the time he applied for benefits. Furthermore, in the interim his employer was insisting that plaintiff's discharge was for good cause and was contesting plaintiff's right to reinstatement with back pay. Thus, plaintiff was clearly in need of unemployment compensation and rightfully received it. Petitioner did not mislead the Department as to his status or his intentions, nor did he withhold any information. Thus, under the clear intent of section 35-4-6, plaintiff was not at fault in the receipt of unemployment benefits.[3]

The Department, however, contends that inasmuch as plaintiff has received his back pay, it would be unfair for him to retain the benefits which admittedly he was entitled to at the time he received them. Under the language of section 35-4-6(d), fraud or fault is a prerequisite to the recovery or recoupment of cash for the fund for benefits paid. The legislature could have conferred a broader right of recovery in favor of the fund if it had seen fit to do so.[4] It did not, and this Court will not expand judicially the limitations upon recovery or recoupment that are plainly expressed in section 35-4-6(d).[5]

The decision of the Commission is reversed, and the case is remanded for entry of judgment in accordance with this opinion.

STEWART, DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Justice (dissenting):

I dissent. The majority, while conceding that "the situation presented here is a difficult one," concludes that our statutes and the law are impotent to prevent a result which is totally abhorrent to the spirit and intent of unemployment compensation

2. See U.C.A., 1953, § 35-4-2 (Repl.Vol. 4B, 1974 ed.). See also, e.g., Gray v. Dep't of Employment Sec., 681 P.2d 807, 811 n. 6 (Utah 1984).

3. See Clearfield City v. Dep't of Employment Sec., 663 P.2d 440, 442 n. 1 (Utah 1983). See also Waters v. State ex rel. Maryland Unemployment Ins. Fund, 220 Md. 337, 349-50, 152 A.2d 811, 817 (1959); Martinez v. Texas Employment Comm'n, 570 S.W.2d 28, 32 (Tex.Civ.App.1978); Annot., 90 A.L.R.3d 987 (1979).

4. Other states have legislatively dealt with this problem. For example, the Arizona legislature has provided that a person who is without fault can be required, in the discretion of the commission, to either repay the amount or have the sum deducted from future benefits. If recoupment would defeat the purpose of the act or be against equity and good conscience, repayment or deduction is not required. Ariz.Rev.Stat.Ann § 23-788 (1983). See Arizona Dep't of Economic Sec. v. Lidback, 26 Ariz.App. 143, 145, 546 P.2d 1152, 1154 (1976).

5. The dissent would apply principles of common law in order to effect recoupment. However, the scheme of workers' compensation was unknown at common law. It is wholly statutory in origin. As such, workers are held to a high standard of compliance. By the same token, the Commission need also be held to adhere to its own rules and enforcement procedures.

laws, *viz.*, that the plaintiff may keep his double recovery and has no duty to return any of the unemployment compensation which he received during a period of time for which he has now been awarded back pay. I do not find that our statutes or the law compel this admittedly unfortunate result. It would seem that in the spirit of fair play and decency such a contest as is presented here might have never been presented, but since the plaintiff insists on keeping both the unemployment benefits and his full wages, our statutes and the law are put to the test to determine whether they are availing to avoid this windfall at the expense of employers and taxpayers who sustain the unemployment compensation system. I conclude that both under our statutes and the common law, the plaintiff cannot keep unemployment compensation and his wages for the same period of time.

I.

Rule A71–07–1:6(4)C.3 of the Department of Employment Security provides:

3. Receipt of Settlement or Backpay.

a. A claimant is "at fault" for an overpayment created if he fails to advise the department that grievance procedures are being pursued which may result in payment of wages for weeks he claims benefits.

b. When the claimant does advise the department prior to receiving a settlement that he has filed a grievance with his employer, he shall not be "at fault" if an overpayment is created due to payment of wages attributable to weeks for which he received benefits. *The claimant will be required to assign* that portion of the settlement which is equivalent to the amount of benefits received, to be directly repaid to the department by the employer. If the grievance is resolved in favor of the claimant and the employer was properly notified of the wage assignment, the employer is liable to immediately reimburse the unemployment insurance fund upon settlement of the grievance. . . .

(Emphasis added.) Subparagraph "a" is not applicable here because the plaintiff did advise the Department that he was pursuing grievance procedures with his employer. However, subparagraph "b" is controlling. Reading its three sentences together, it provides that when a claimant's grievance with his employer is settled and he is awarded back pay, he shall not be "at fault" if an overpayment is created, if he assigns to the Department that portion of the settlement which is equivalent to the amount of benefits received. The converse of the rule is that if he refuses to make the assignment, he shall be "at fault." Although the rule clearly, plainly, and emphatically states that "the claimant will be required to assign that portion of the settlement which is equivalent to the amount of benefits received," the majority opinion concludes that if the claimant refuses or fails to do so, the Department is powerless to find the claimant "at fault" because "the rule does not authorize such a finding, and this Court will not read such an interpretation into the rule." Nothing has to be read into the rule. It is clear on its face that double recovery is not sanctioned. U.C.A., 1953, § 35–4–6(d) provides that when a claimant is "at fault," he can be ordered to repay amounts received.

The majority seeks to justify its result on the ground that the plaintiff was clearly in need of unemployment compensation, rightfully received it, and did not mislead the Department as to his status or intentions nor did he withhold any information. All of that, of course, is true, but it does not follow that when his grievance is resolved and he is awarded back pay that he should, at the expense of employers' and taxpayers' contributions, be allowed to flout the rules of the Department by refusing to execute the assignment in reimbursement of the unemployment compensation he received to tide him over until his dispute with his employer was settled. The Department, the administrative law judge, and the Board of Review, all of whom ordered the plaintiff to make reimbursement, will be surprised to learn that the Department's own rule on which they rely

requires a claimant to execute a wage assignment but provides no consequence for his failure to do so.

Courts in other jurisdictions have encountered no problem in finding the authority to order a discharged employee to make reimbursement for unemployment compensation received when he recovers in arbitration his job plus back pay. This is true even though in the arbitration award, there is deducted from his back pay amounts he earned during the period of time he was not actively working and any unemployment compensation benefits he received. *Griggs v. Sands*, 526 S.W.2d 441 (Tenn. 1975); *Texas Employment Commission v. Busby*, 457 S.W.2d 170 (Tex.Civ.App.1970); *Meyers v. Director of Division of Employment Security*, 341 Mass. 79, 167 N.E.2d 160 (1960). In these cases, the agency administering the unemployment compensation law pursuant to statute redetermined the eligibility of the employee for unemployment compensation after he received his back pay award. In each case, the agency ruled that the employee was not unemployed within the meaning of the statute and thus was not eligible for benefits. We have a similar procedure in this state. U.C.A., 1953, § 35–4–6(b) provides:

> Jurisdiction over benefits shall be continuous. Upon its own initiative or upon application of any party affected, the commission or its authorized representative may on the basis of change in conditions or because of a mistake as to facts, review a decision allowing or disallowing in whole or in part a claim for benefits. Such review shall be conducted in accordance with such regulations as the commission may prescribe and may result in a new decision which may award, terminate, continue, increase, or decrease such benefits, or may result in a referral of such claim to an appeal tribunal....

My research has produced only two cases holding that an agency administering an unemployment compensation law lacks the statutory authority to recoup benefits paid when the claimant later receives an award of back pay. *Hill v. Review Board of*

*Indiana*, 124 Ind.App. 83, 112 N.E.2d 218 (1953); *Waters v. State*, 220 Md. 337, 152 A.2d 811 (1959). In other cases denying recoupment, the employee had not received double recovery either because the amount of compensation paid him was deducted from his back-pay award, *Department of Labor and Industry v. Smalls*, 153 N.J.Super. 411, 379 A.2d 1283 (1977); or because of a mistake of the agency the claimant was paid compensation which it was later determined he was not entitled to, *Martinez v. Texas Employment Commission*, 570 S.W.2d 28 (Tex.Civ.App.1978); or because on appeal the employee was found not to have been entitled to benefits under the facts or controlling law, *Galvin v. Iowa Beef Processors, Inc.*, 261 N.W.2d 701 (Iowa 1978); *Western Hardwood Lumber Co. v. California Employment Commission*, 58 Cal.App.2d 403, 137 P.2d 76 (1943). Obviously, when the employee does not realize a double recovery and in good faith receives compensation which a higher tribunal later determines he was not entitled to, it would work a great hardship for an employee to repay the benefits which he had received and spent. That is not the case, however, where there is a double recovery. The plaintiff in the instant case is only asked to make reimbursement out of funds he has on hand out of the award of back pay.

II.

Even if we are to assume the correctness of the majority's holding that the legislature has not provided the means in our statutes for the Department to recoup the unemployment compensation benefits it has paid to a claimant who later receives a back-pay award, the Department is not helpless to avoid the lamentable result of double recovery. The majority does not contend, nor could it, that there is anything in our statutes or in the rules of the Department which expressly provides or even suggests that a claimant will be relieved of all responsibility to reimburse the Department if he refuses to sign the wage assignment form. The lack of express statutory authority to recoup has not stopped agen-

cies and departments administering unemployment compensation laws in several jurisdictions from recovering reimbursement when a double recovery by the claimant would result. In *People v. Duggan,* 30 A.D.2d 736, 291 N.Y.S.2d 582 (1968), the court held that the department could recover benefits paid to a claimant through his willful misrepresentation independent of any express statutory authority. The court allowed the department to recover under the common-law theory of "money had and received" and found that the statutes did not provide the exclusive basis for recovery. In other jurisdictions, the agency has been allowed to collect unemployment benefits paid to an employee from his employer, when the employer has deducted the benefits paid from the amount of the back-pay award. Recovery was allowed independent of statute and was premised on the common-law principle of unjust enrichment. These courts have reasoned that to allow the employer to deduct and retain the amount of unemployment compensation benefits which have been paid to an employee when he receives his back-pay award would be unjustly enriching the employer at the expense of the state. *Department of Labor and Industry v. Smalls,* 153 N.J.Super. 411, 379 A.2d 1283 (1977); *State v. Continental Baking Co.,* 72 Wash.2d 138, 431 P.2d 993 (1967); *State v. Rucker,* 211 Md. 153, 126 A.2d 846 (1956). In the latter case, the court cited with approval and relied upon the following statement by Lord Mansfield in *Moses v. Macferlan,* 2 Burrows 1005:

> "If the defendant be under an obligation, from the ties of natural justice, to refund; the law implies a debt, and gives this action, founded in the equity of the plaintiff's case, as it were upon a contract, ('quasi ex contractu',) * * *. * * * the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money."

The Maryland court continued:

> It is stated in Poe on Pleading, Tiffany Edition, Section 117, in reference to the count for money had and received: "This count is commonly said to be equally remedial with a bill in equity, and, in general terms, lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain." Mr. Poe relied on Moses v. Macferlan, supra. See also Murphey v. Barron, 1 Har. & G. 258. While there was only a special count in the declaration here, the facts are set out with sufficient particularity to be treated as a count for money had and received.

The court analogized its holding to cases which it cited where a state or one of its subdivisions had recovered overpayments, quite independently of any statutory authority. Reliance was also placed on section 46 of the Restatement of Restitution.

In conclusion, the unfortunate and regrettable conclusion reached by the majority need not be reached. The purpose of unemployment compensation laws is to provide for workers who become unemployed through no fault of their own. Unemployment compensation funds are supported by contributions from employers and taxpayers. It has a worthy purpose, but that purpose is thwarted when a worker can refuse to abide by a rule of the administering department, refuse to sign a wage assignment after he has drawn compensation during his weeks of need while his grievance was being processed, and the Department has to sit idly by because it can do nothing to redress the injustice of double recovery. The purpose of the statutes is to compensate the employee for unemployment, not to unjustly enrich him.

I would sustain the order of the Department, the administrative law judge, and the Board of Review ordering the plaintiff to make restitution.